**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PERIRX, INC. | : | |
| *Plaintiff*, | : | **CIVIL ACTION** |
| | : | |
| v. | : | **No: 2:20-cv-02212-JDW** |
| | : | |
| THE REGENTS UNIVERSITY OF | : | |
| CALIFORNIA, *ET AL.* | : | |
| *Defendants*. | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MOTION FOR**
<u>**SANCTIONS AGAINST PLAINTIFF PERIRX, INC. AND ITS COUNSEL**</u>

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................ 1

II.   APPLICABLE LEGAL STANDARDS ...................................................................... 2

III.  ARGUMENT .............................................................................................................. 3

    A.  Intentional Misrepresentations to Survive Defendants' Motions to Dismiss ................... 3

        1.  PeriRx's First Contact with Temple University was in November 2019, Well After the Date Represented by PeriRx ................................................................ 4

        2.  No Basis Exists for the Allegation that LabCorp "Walked Away from the Table" 5

        3.  PeriRx Knew Its Alter Ego Allegations Were False and Unsupportable .............. 7

        4.  PeriRx Knew Its Allegation that the POC Patents Were Licensed to Others Was False, Yet Pled It Based Only on Aruras' Subjective Belief ................................. 9

    B.  The Initial Complaint and Lack of Pre-Filing Diligence ............................................. 10

    C.  PeriRx's Failure to Disclose the Release and Withdraw Barred Claims ...................... 12

    D.  PeriRx's Pleading and Maintenance of Barred Claims .................................................. 13

    E.  Proceeding In the Face of The Regents' Detailed Letter .............................................. 14

    F.  The FAC and Second Motion to Dismiss...................................................................... 16

    G.  Woefully Deficient Interrogatory Responses ................................................................ 17

    H.  Misrepresentations Surrounding Kevin J. Kelly .......................................................... 19

    I.  Failing to Check Public Resources and the Production ................................................. 22

    J.  Protesting a Reasonable Protective Order .................................................................... 23

    K.  Failure to Consult with a Patent Attorney .................................................................... 24

    L.  PeriRx's Pattern of Activity in this Case Should Be Dissuaded ................................... 25

IV.  CONCLUSION ........................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ally Fin., Inc. v. Mente Chevrolet Oldsmobile, Inc.*,
   2012 WL 4473240 (E.D. Pa. Sept. 28, 2012) .........................................................3, 10, 11, 16

*Alphonso v. Pitney Bowes, Inc.*,
   356 F. Supp. 2d 442 (D.N.J. 2005) ...........................................................................13, 14, 24

*Banks v. Schutter*,
   2009 WL 113742 (E.D. Pa. Jan. 15, 2009) ................................................................................25

*Brice v. Hoffert*,
   2019 WL 3712013 (E.D. Pa. Aug. 7, 2019) ................................................................................2

*Curry v. UPS*,
   2017 WL 4810701 (E.D. Pa. Oct. 25, 2017).................................................................................3

*Doherty v. Allstate Indem. Co.*,
   2019 WL 4751922 (E.D. Pa. Sept. 30, 2019) ...........................................................................25

*Ford v. Temple Hosp.*,
   790 F.2d 342 (3d Cir. 1986).........................................................................................................16

*Ford Motor Co. v. Summit Motor Prods.*,
   930 F.2d 277 (3d Cir. 1991) .........................................................................................................2

*Greenspan v. Platinum Healthcare Grp., LLC*,
   2021 WL 978899 (E.D. Pa. Mar. 16, 2021)..........................................................................2, 12

*Hall v. Clifton Precision*,
   150 F.R.D. 525 (E.D. Pa. 1993).................................................................................................21

*Keister v. PPL Corp.*,
   677 F. App'x 63 (3d Cir. 2017) ...................................................................................................2

*Loftus v. SEPTA*,
   8 F. Supp. 2d 458 (E.D. Pa. 1998) .......................................................................................14, 16

*Matthews v. Freedman*,
   128 F.R.D. 194 (E.D. Pa. 1989).................................................................................................14

*Morning Sun Books, Inc. v. Div. Point Models, Inc.*,
   826 F. App'x 167 (3d Cir. 2020) .................................................................................................3

*Murphy & Housing Authority & Urban Redevelopment Agency*,
    158 F. Supp. 2d 438 (D.N.J. 2001) .................................................................14, 15

*In re Prudential Ins. Co. Am. Sales Practice Litig. Actions*,
    278 F.3d 175 (3d Cir. 2002)..............................................................................14

*Reynolds v. Metro Life Ins. Co.*,
    2007 WL 603012 (W.D. Pa. Feb. 22, 2007) ....................................................25

*Rodriguez v. Bank Cent.*,
    155 F.R.D. 403 (D.P.R. 1994) .........................................................................24

*Shelton v. FCS Capital LLC*,
    2020 WL 4196211 (E.D. Pa. July 21, 2020)......................................................3

*Simmerman v. Corino*,
    27 F.3d 58 (3d Cir. 1994) ................................................................................10

*Sosinavage v. Thomson*,
    2019 WL 494824 (D.N.J. Feb. 8, 2019) .....................................................16, 23

*In re VerHoef*,
    888 F.3d 1362 (Fed. Cir. 2018)........................................................................12

*Visioneer, Inc. v. Keyscan, Inc.*,
    2009 WL 10742829 (N.D. Cal. July 9, 2009)...................................................11

**Statutes**

28 U.S.C. § 1927.....................................................................................................3, 14, 16

**Other Authorities**

FED. R. CIV. P. 11(b)(1) ................................................................................................2

FED. R. CIV. P. 11(b)(3) ................................................................................................2

FED. R. CIV. P. 11(c)(1) ................................................................................................2

FED. R. CIV. P. 11(c)(4)................................................................................................2

FED. R. CIV. P. 37(a)(5)................................................................................................3

Local Civil Rule 83.6.1 .................................................................................................3

Local Civil Rule 83.6.1(c) ............................................................................................3

**EXHIBIT LIST**

| | |
|---|---|
| Ex. 1 | Email dated April 12, 2021, from T. McDevitt to A. Pereira and counsel of record |
| Ex. 2 | February 7, 2021, letter from P. Hirschhorn to L. Agnew re PeriRx's Flawed Amended Complaint |
| Ex. 3 | Email dated December 28, 2020, from A. Pereira to counsel of record, with attachments |
| Ex. 4 | Email dated January 14, 2021, from L. Agnew to A. Pereira |
| Ex. 5 | Email dated March 17, 2021, from A. Pereira to L. Agnew |
| Ex. 6 | Email dated April 19, 2021, from A. Pereira to L. Agnew |
| Ex. 7 | Email dated May 13, 2021, from A. Pereira to L. Agnew |
| Ex. 8 | Email dated May 20, 2021, from A. Pereira to L. Agnew |
| Ex. 9 | January 15, 2021, letter from L. Agnew to P. Hirschhorn |
| Ex. 10 | February 5, 2021, letter from L. Agnew to P. Hirschhorn |
| Ex. 11 | January 19, 2021, letter from P. Hirschhorn to L. Agnew re: Request for Withdrawal of Dismissed and Inapplicable Allegations and Claims and Notice of Motion to Dismiss |
| Ex. 12 | Email dated January 29, 2021, from P. Hirschhorn to L. Agnew |
| Ex. 13 | Email dated October 2, 2012, from K. Kelly to S. Swanick and C. Byrd (PeriRx_00078835-6) |
| Ex. 14 | Transcript from the deposition of Kevin Joseph Kelly taken on July 28, 2021 |
| Ex. 15 | Email dated December 6, 2013, and attached Memorandum from K. Kelly to C. Byrd dated December 5, 2013, titled Amended and Restated Exclusive License Agreement (PeriRx_00024587-91) |
| Ex. 16 | Email dated December 16, 2013, and attached Memorandum from K. Kelly to C. Byrd dated December 16, 2013, titled Amended and Restated Exclusive License Agreement (PeriRx_00024665-7) |

v

Ex. 17        Email dated July 24, 2012, and attached letter from K. Kelly to C. Byrd
              and attached marked-up Amended and Restated Exclusive License
              Agreement between PeriRx and RNA (PeriRx_00047162-211)

Ex. 18        Email string dated August 22, 2012, from C. Byrd to K. Kelly and S.
              Swanick and attached marked-up Amended and Restated Exclusive
              License Agreement between PeriRx and RNA (RNAMETRIX-00002405-
              55)

## I.     INTRODUCTION

Counsel representing The Regents in this matter has, collectively, over eighty years of district court litigation experience.  Not once in those eighty years has The Regents' counsel brought this type of motion.  But this is an exceptional situation, warranting exception relief. Bad behavior by PeriRx and its counsel has been pervasive throughout this litigation, including: failing to conduct pre-suit diligence, making allegations that PeriRx knew were blatantly false and/or unsupportable, failing to disclose the Release, pleading claims barred by the statute of limitations, filing a First Amended Complaint ("FAC") with already-dismissed claims and on theories The Regents had carefully explained were not supported and then continuing to pursue these theories through summary judgment based on fabricated "facts," initially refusing to respond to, and then serving woefully deficient interrogatory responses, evasive acts associated with PeriRx GC Kevin Kelly, failing to check publicly-available resources, failing to review documents produced in this case, protesting a reasonable Protective Order, and failing to consult with competent patent counsel.  This conduct should not go unpunished.

With receipt of each letter and email from The Regents' counsel explaining why PeriRx's claims lacked merit, by hearing each deponent's testimony that contradicted PeriRx's assertions, and with receipt of each produced document refuting PeriRx's unsupported theories, PeriRx's and its counsel's behavior became more culpable.  By the time this memorandum is filed, The Regents will have endured over seventeen months of expensive litigation paid for by the People of the State of California.  While PeriRx entered into license agreements only with RNAmeTRIX, Inc. ("RNA"), PeriRx haled The Regents into court on false pretenses, requesting "no less than $250,000,000."  Due to the egregious nature of PeriRx's and its counsel's acts, The Regents requests sanctions against PeriRx and its counsel and reimbursement for attorneys' fees, costs, and expenses needlessly spent on this litigation.

## II.    APPLICABLE LEGAL STANDARDS

Rule 11 provides that an attorney who submits "to the court a pleading, written motion, or other paper . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:  (1) it is not being presented for any improper purpose, such as to . . . needlessly increase the cost of litigation; . . . [and that] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation of discovery."  *FED. R. CIV. P. 11(b)(1), (3)*.  "Rule 11 demands a lawyer have a good faith basis that there is evidentiary support for every assertion in a pleading."  *Greenspan v. Platinum Healthcare Grp., LLC*, No. 2:20-cv-05874, 2021 WL 978899, at *1 (E.D. Pa. Mar. 16, 2021).

When deciding whether to impose sanctions, courts consider "whether the attorney had objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact."  *Id.* at *2 (citing *Ford Motor Co. v. Summit Motor Prods.*, 930 F.2d 277, 289 (3d Cir. 1991); *Brice v. Hoffert*, No. 5:15-cv-4020, 2019 WL 3712013 (E.D. Pa. Aug. 7, 2019)).  Sanctions imposed on any attorney, law firm, or party that violated Rule 11 or is responsible for the violation are to be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.  *FED. R. CIV. P. 11(c)(1), (4); see also Greenspan*, 2021 WL 978899, at *3.  Sanctions may include "payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *FED. R. CIV. P. 11(c)(4)*.  The goal of Rule 11 is accountability, and, by this motion, The Regents seeks to hold PeriRx and its counsel accountable for their bad acts.  *See, e.g., Keister v. PPL Corp.*, 677 F. App'x 63, 68 (3d Cir. 2017).

"Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and

attorneys' fees reasonably incurred because of such conduct." *28 U.S.C. § 1927.* Any attorney

who fails to comply with Local Civil Rule 83.6.1 may be disciplined as the Court deems just.

*Local R. 83.6.1(c); Ally Fin., Inc. v. Mente Chevrolet Oldsmobile, Inc.*, No. 11-7709, 2012 WL

4473240, at *1, *11 (E.D. Pa. Sept. 28, 2012)*; Curry v. UPS*, No. 17-2331, 2017 WL 4810701,

at *1 (E.D. Pa. Oct. 25, 2017). The Court may also award reasonable expenses including

attorneys' fees incurred in making a successful motion to compel. *Fed. R. Civ. P. 37(a)(5); see*

*Shelton v. FCS Capital LLC*, No. 2:18-cv-03723, 2020 WL 4196211, at *2 (E.D. Pa. July 21,

2020).

## III.    ARGUMENT

At every stage of this litigation, PeriRx and its counsel engaged in objectively

unreasonable conduct and bad faith. *See, e.g., Morning Sun Books, Inc. v. Div. Point Models,*

*Inc.*, 826 F. App'x 167, 171 (3d Cir. 2020). The pattern of bad behavior by PeriRx and its

counsel, exemplified below, warrants sanctions.[1]

### A.    Intentional Misrepresentations to Survive Defendants' Motions to Dismiss

The three key issues remaining in this case relate to insulin resistance, the Point-of-Care

("POC") Patents, and alter ego. On insulin resistance, PeriRx's allegation is that Dr. Wong ran

an insulin resistance study and filed "competing patents" and "[d]uring this time" PeriRx "was

negotiating with several entities, including Temple University and LabCorp, about developing

tests for the detection of insulin resistance," but "these entities learned that Wong and UCLA had

gone behind PeriRx's back and attempted to publish and obtain patents on their own, both

walked away from the table." *See ECF 1, ¶ 139; ECF 71, ¶ 142.* On the POC Patents, PeriRx

alleged in part that The Regents licensed to third-party Aruras "a number of patents" that "had

---

[1] Should The Regents' Motion be granted, The Regents will furnish the specific amounts sought and any supporting documentation requested by the Court.

already been licensed" to PeriRx, whereby "Aruras was led to believe that they owned these rights causing Aruras to threaten PeriRx with infringement."  *See ECF 1, ¶¶ 145, 152; ECF 71, ¶ 91, 105*.  Based on these allegations and PeriRx's fabricated facts regarding alter ego, the Court allowed PeriRx's contract-based claims to proceed, resulting in both Defendants incurring the expense of voluminous discovery.  *See ECF 62 at ¶¶ 43-44*.  Defendants learned through discovery that as to all remaining issues, PeriRx pled "facts" that they *knew* were false.

### 1.    PeriRx's First Contact with Temple University was in November 2019, Well After the Date Represented by PeriRx

On insulin resistance, PeriRx misrepresented that its "negotiations" with Temple were "during the time" of Dr. Wong's work on the insulin resistance study and the May 2016 filing of the insulin resistance provisional application.  *See ECF 1, ¶ 139; ECF 72, ¶ 142*.  In discovery, PeriRx at first refused to provide dates for the alleged discussions with Temple, necessitating a successful motion to compel.  *ECF 91*; *ECF 91-5 at 5*; *ECF 91-3 at 11-12*.  Upon the Court's intervention, PeriRx provided "amended" Interrogatory Responses with a sworn verification by PeriRx's CEO, Mr. Swanick,[2] averring that PeriRx negotiated with Temple "***beginning in 2018*** through early 2020" and Temple "learned" about the insulin resistance study and allegedly competing patents when Dr. Wong's paper on insulin resistance "surfaced in the public domain ***in or around October 2017***" after which Temple "inquired about this same issue in 2019."  *ECF 91-3 at 11-12*; *ECF 119-61 at 18, 20-23* (emphases added).  These were outright misrepresentations that PeriRx has now admitted.  *ECF 138, Response 159, 161, 168, 169-171.*

PeriRx's Mr. Swanick first contacted Temple University looking for a job in ***November***

---

[2] PeriRx's amended Interrogatory Responses included a notarized verification that claimed that Mr. Swanick was with the notary in Suffolk County, New York when it was signed, even though he admitted to having been in Pennsylvania.  *ECF 119-61 at 32; ECF 121-14 at 165:5-167:1.*

*2019*, years after the alleged insulin resistance-related acts by The Regents, and more than eight months *after* the March 2019 termination of PeriRx's sublicense rights. *ECF 119-6 at 52:21-54:3, 129:22-130:4; ECF 119-96.* Specifically, on November 18, 2019, Mr. Swanick reached out to Ellen Weber, saying "Hi Ellen--- My name is Steve Swanick and I'm searching for a new opportunity." *ECF 119-96.* Ms. Weber put him in touch with Dr. Todd Abrams at Temple. *Id.; ECF 119-97 at 15:7-13.* PeriRx conveniently omitted this exchange from its document productions.[3] When asked about the first contact with Temple at his deposition, Mr. Swanick still attempted to fudge the dates. *See ECF 119-6 at 51:25-53:11, 59:23-60:8.*

Almost all of the conversations between Dr. Abrams and Mr. Swanick related to a Temple spinoff company called OrthoMend that was working on an orthopedic resorbable screw and was looking for new leadership. *ECF 119-97 at 20:4-22:16.* Contrary to PeriRx's assertions, Temple's representative testified that there were never any negotiations between Temple and PeriRx on any diabetes or insulin resistance technology. *Id. at 18:7-20:16.* Dr. Abrams tried to connect Mr. Swanick with a different unnamed company, but that company "didn't have any interest in hearing about" the insulin resistance technology, so Dr. Abrams did *not* disclose its identity to PeriRx, did *not* put PeriRx in contact with the company, "[a]nd that was where it ended." *Id. at 18:16-20:16.* PeriRx should be held to task for its fictitious Temple "negotiations" that it fabricated to survive dismissal. *See ECF 40 at 21-22; ECF 62 at ¶¶ 43-44.*

## 2. No Basis Exists for the Allegation that LabCorp "Walked Away from the Table"

PeriRx claimed that LabCorp "learned" about The Regents' "competing patents" on insulin resistance through the Wong paper that "surfaced in the public domain *in or around*

---

[3] When questioned at his deposition on the specifics of the November 18, 2019, Temple email that PeriRx had not produced, PeriRx's counsel quickly sent an email during the deposition asking for the status of The Regents' subpoena to Temple. *Ex. 1*; *see ECF 119-6 at 128:9-130:9.*

*October 2017*," and, with respect to that article, PeriRx averred in its Interrogatory Responses that "[a]t no time did PeriRx ever provide LabCorp . . . any article, patent, patent application, provisional patent application, or any other information." *ECF 119-61 at 20-21.* That was not true. Mr. Swanick sent LabCorp the Wong 2017 article and a slide which falsely represented that the insulin resistance work was funded by PeriRx. *ECF 119-6 at 147:13-149:10; ECF 119-102, ECF 119-103; ECF 138, Responses 168, 169.* When confronted with PeriRx's Interrogatory Responses, which he had verified (*ECF 121-14 at 163:7-164:3; ECF 119-61*), Mr. Swanick disingenuously stated that he did not consider the 2017 Wong paper to be an "article" but instead a "published research paper" (*ECF 121-14 at 167:10-172:6*), even though the next sentence of the Response called the 2017 Wong paper an "article." *ECF 119-61 at 21.*

With respect to "negotiations" with LabCorp, PeriRx provided a proposal to LabCorp to which LabCorp did not substantively respond. *ECF 119-99 at 84:7-85:8.* LabCorp did not move forward with the PeriRx proposal. LabCorp's documentation shows that it considered the PeriRx proposal and the insulin resistance technology and concluded that it was unlikely that "this would lead to a clinically useful test useful for IR measurement and/or predictive test for Type 2 diabetes." *ECF 119-101; ECF 119-99 at 76:2-80:2.* PeriRx submitted a specific funding proposal to LabCorp in January of 2018, and LabCorp never responded. *See ECF 119-99 at 80:3-82:3; ECF 119-100.*

LabCorp's 30(b)(6) witness, Dr. Watson, who fielded PeriRx's proposal on insulin resistance, testified that she was not aware of patent rights, Dr. Wong's 2017 paper, or any other "IP discussions that were part of the business advisory team discussions" on insulin resistance; instead, there simply was not enough "support internally from the advisory group to move forward with something." *ECF 119-99 at 82:12-85:8.* As for PeriRx's allegations that LabCorp

walked away from the table "because it learned that Wong and UCLA had gone behind PeriRx's back and attempted to publish and obtain patents on its own," Dr. Watson testified that was not true. *ECF 119-99 at 85:9-87:23; ECF 119-104.* Despite no evidence supporting the notion that LabCorp's decision had anything to do with patents, publications, or the 2017 Wong paper, and despite specifically providing LabCorp with the 2017 Wong paper, PeriRx pressed its claims until after receiving a draft of this sanctions motion. *ECF 138, Response 173.* PeriRx's misrepresentations regarding third party interactions on insulin resistance, made to keep The Regents in this action, should not go unpunished.

> **3.    PeriRx Knew Its Alter Ego Allegations Were False and Unsupportable**

PeriRx pled unsupported "facts" on alter ego that it knew were false. For example, in the FAC, PeriRx alleged that RNA's counsel, Christophe Byrd, communicated to PeriRx "hundreds of times" that all agreements between RNA and PeriRx were reviewed, revised, and approved by The Regents. *ECF 71*, ¶ 33. This was untrue as confirmed by Dr. Byrd at his deposition (*see ECF 119-15 at 81:3-82:13*), and no evidence produced in discovery supports PeriRx's baseless allegation other than Mr. Swanick's self-serving testimony. *See ECF 119-6 at 24:12-25:16.*[4] The Regents' licensing officer, Ms. Loughran, confirmed at her 30(b)(6) deposition that she and no one else at The Regents ever reviewed, revised, or approved any agreement between RNA and PeriRx prior to execution. *See ECF 119-11 at 240:18-243:6.* Similarly, Mr. Konieczny, the attorney who negotiated with RNA on behalf of PeriRx with respect to the original 2010 agreement between RNA and PeriRx, testified that he had never negotiated directly with The Regents. *See ECF 119-34 at 19:3-24, 81:23-83:20.* There is no evidence that any agreement

---

[4] Tellingly, Mr. Swanick claimed there were "many e-mails" that told him of the requirement for The Regents' pre-approval that would be found in Mr. Swanick's emails. *ECF 119-6 at 24:24-25:16.* No such emails were produced by PeriRx, any other party, or non-party Wilson Sonsini, counsel for RNA.

between PeriRx and RNA was ever sent to The Regents prior to execution.  The allegation is unsupportable, which is something that PeriRx had to have known.

PeriRx argued that "[t]he most telling" allegation supporting alter ego (*ECF 40 at 16*) is that The Regents "unilaterally decided to dissolve RNA" and "unilaterally decided to terminate the PeriRx-RNA Agreements."  *ECF 1 at ¶¶ 30, 198, 266, 489-90*.  The argument was unsupported and *contradicted by evidence provided to PeriRx on January 11, 2021*, prior to PeriRx filing the FAC which showed that Dr. Wong on behalf of RNA sent The Regents an email on December 15, 2018, entitled "RNAmeTRIX Intent to terminate" conveying RNA's "intent to terminate the license agreement between The Regents and RNAmeTRIX," that The Regents acknowledged and confirmed pursuant to Article 13, "TERMINATION BY LICENSEE."  *ECF 119-36 (Ex. B); ECF 119-39*.  Despite The Regents providing PeriRx with this evidence prior to the FAC filing, on January 15, 2021, PeriRx filed its FAC repeating the baseless allegation repackaged as one where "UCLA directed Wong to have RNA allegedly terminate its relationship with UCLA and exercise RNA's right to terminate the UCLA Agreement," pled "[u]pon information and belief."  *ECF 71, ¶¶ 44-46*.  PeriRx did not abandon this false allegation until midway through summary judgment briefing, for which sanctions should be awarded.  *ECF 137, ¶¶ 93-99*; *see Sosinavage v. Thomson*, No. 14-3292, 2019 WL 494824, at *3 (D.N.J. Feb. 8, 2019) (noting that Rule 11 "establishes an ongoing duty to cease litigation of claims that are no longer tenable.").

But even at that stage in the litigation, PeriRx continued to fabricate "facts" alleged for the first time in its summary judgment papers, including that "[t]here is no evidence that the UCLA Agreement was the product of substantive negotiations," *ECF 138-29, 15*, which PeriRx alleged citing nothing, despite the multitude of drafts and emails exchanged between The

Regents and RNA's attorney Byrd negotiating a number of provisions, *see, e.g., ECF 119-18; ECF 119-19; ECF 119-12; ECF 119-20; ECF 119-21; ECF 119-22; ECF 119-13; ECF 135-6 at 54:23-57:3*, and the testimony of both Byrd (*ECF 135-6 at 54:23-57:3*) and Loughran regarding "long, tough negotiation" with RNA in which "every paragraph was negotiated," *ECF 135-5 at 236:5-237:8*.  PeriRx also misrepresented to the Court that RNA's patent counsel Kate Murashige was a "UCLA attorney," *ECF 138-29, 16; see ECF 135-6 at 64:24-66:13; ECF 119-16, 3; ECF 136-11, ¶¶ 2-4*, and that RNA's attorney Byrd was taking instructions from The Regents, *ECF 138-29, 16*, despite Byrd testifying that he was *not* doing that.  *ECF 135-6 at 47:13-48:9; see also ECF 135-5 at 246:18-248:8; ECF 135-6 at pdf p. 29 (errata)* (correcting 79:10).  Such gamesmanship should not be condoned, and The Regents should be awarded attorneys' fees because of PeriRx's clear lack of basis for alter ego and its shifting theories.

### 4.    PeriRx Knew Its Allegation that the POC Patents Were Licensed to Others Was False, Yet Pled It Based Only on Aruras' Subjective Belief

Over the course of its sublicensee relationship with RNA, PeriRx chose to return rights to the POC Patents in all jurisdictions outside of North America and Europe.  *ECF 119-51 at 111:7-112:4, 122:15-125:22; ECF 43-12 at 21-22 (pdf 23-24)*.  Of The Regents' patents previously sublicensed to PeriRx, only the *returned* POC rights were licensed to Aruras, which PeriRx knew years before filing this lawsuit.  *ECF 119-51 at 112:11-113:18, 169:18-172:4, ECF 32-10 at 26-28 (Appx. A)*.  Yet, in its complaints, PeriRx repeatedly alleged wrongdoing by The Regents having licensed Aruras "a number of patents" that "***had already been licensed***" to PeriRx, whereby "Aruras was led to believe that they owned these rights causing Aruras to threaten PeriRx with infringement."  *ECF 1, ¶¶ 145, 152; ECF 71, ¶ 91, 105* (emphases added).  That PeriRx pled this based only on Aruras' supposed *subjective* belief ("Aruras was led to believe") rather than the facts *known* to PeriRx evidences bad faith, and has prejudiced The

Regents who have had to brief the non-issue several times including in its motion for summary judgment.

### B.   The Initial Complaint and Lack of Pre-Filing Diligence

PeriRx's original Complaint shows a lack of pre-suit diligence, which was compounded by PeriRx's refusal to withdraw the claims and underlying allegations despite detailed explanations from The Regents in letters and pre-motion meet and confers.

Rule 11 imposed upon PeriRx and its counsel a duty to certify that the factual contentions in the Complaint had evidentiary support. *Ally*, 2012 WL 4473240, at *10. In deciding whether PeriRx's and its counsel's actions were reasonable under the circumstances, one asks "whether, at the time counsel filed the complaint, counsel . . . could reasonably have argued in support of his legal theory." *Id*. To comply with this requirement, counsel "must conduct a reasonable investigation of the facts and a normally competent level of legal research to support the presentation." *Id*. (quoting *Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir. 1994)). Failure by PeriRx and its counsel to do either is unreasonable under the circumstances, *i.e.*, seeking "no less than $250,000,000" from The Regents. *See ECF 1 at 99-100*.

One egregious example of this is PeriRx's allegations, in both the original and amended complaints, that The Regents failed to procure assignments from listed inventors of the Lung Cancer Patent. *ECF 1 at ¶¶ 101-11, 233, 242-44, 251, 260-62, 282, 290-93, 302, 306-08, 323, 327-29, 470, 474-76; ECF 71 at ¶¶ 272-280, 304(e), 317 and 326(e)*. A simple search of publicly-available information at the U.S. Patent Office's website (*see infra Section III.I*) shows assignments were procured and recorded with the Patent Office in 2011, which is something that PeriRx's counsel was specifically informed of in the pre-motion meet and confer related to The Regents' first motion to dismiss. *See ECF 32-12, ¶ 2; ECF 32-13; ECF 32-1 at 16, n.9; see also Visioneer, Inc. v. Keyscan, Inc.*, No. C 08-03967, 2009 WL 10742829 (N.D. Cal. July 9, 2009)

(granting sanctions where the PTO assignment records showed plaintiff did not have full ownership necessary for standing).  The recorded assignments covered the invention and all continuing patent applications.  *Id*.  Had PeriRx exercised a modicum of pre-suit diligence, it would have located these assignments and, had PeriRx and its counsel observed their obligations, they would have withdrawn the allegations.  *See Ally*, 2012 WL 4473240, at *10-11.

Instead, in response to The Regents' motion to dismiss, PeriRx maintained the allegation, which lays bare PeriRx's lack of knowledge of basic patent law and its failure to consult with patent counsel.  *See infra Section III.K.*  PeriRx's "evidence" was emails from The Regents' outside patent counsel exercising diligence in contacting the inventors for new inventor oaths and assignments for a *new* continuation patent application in the Lung Cancer Patent family being filed after the passage of the America Invents Act ("AIA").  There is a simple explanation for this, which is known to any competent patent attorney, *i.e.*, that "[o]n March 16, 2013, the requirements for an inventor's oath or declaration filed with a U.S. patent application changed.  . . . . these changes . . . require assignees to contact inventors of previously-filed applications and ask them to execute a new oath or declaration."  Thompson, *Managing the Changes to the Oath or Declaration Requirement*, 13 Chi.-Kent J. Intell. Prop. 489 (2014), available at: https://scholarship.kentlaw.iit.edu/ckjip/vol13/iss2/7.  PeriRx continued to press this frivolous argument, despite being specifically informed of this basic patent law concept.  *See Ex. 2.*

PeriRx repeatedly made claims that The Regents' failed to credit Dr. Joshipura as an inventor on the Diabetes Patent without explaining (or even alleging) that she made an inventive contribution to the Diabetes Patent, which is required for inventorship.  *ECF 1 at ¶¶ 101-11, 233, 242-44, 251, 260-62, 282, 290-93, 302, 306-08, 323, 327-29, 470, 474-76; ECF 71 at ¶¶ 254-259, 304(d), 318, and 326(d); see In re VerHoef*, 888 F.3d 1362, 1366 (Fed. Cir. 2018).  The

Regents were forced to brief this issue until it was dismissed.  *See ECF 90, ¶¶ 4-8*.

PeriRx's pleadings also repeatedly pressed allegations of wrongdoing that PeriRx

admitted—in the very same pleadings—were cured.  "Pleadings are not an opportunity for

lawyers to throw things against the wall and see what sticks.  Rule 11 requires lawyers to give

some thought to the assertions that they include in pleadings before they file them."  *Greenspan*,

2021 WL 978899, at *3.  PeriRx threw many things against the wall in its rambling, duplicative,

100-page original Complaint and its 79-page FAC.  *See ECF 1*; *ECF 71*.  For example, PeriRx

alleged Dr. Wong failed to provide information regarding an oral cancer study, but the

Complaint also admits whatever Wong's alleged wrongdoings were on the oral cancer study,

they were cured prior to 2012, rendering PeriRx's prolix pleadings wholly irrelevant.  *See

ECF 1, ¶ 236; ¶¶ 238-39*.  PeriRx's pleadings contained various allegations of a dispute between

RNA and PeriRx regarding whether insulin resistance was covered by the agreements, despite

then admitting that "Wong and RNA eventually agreed" with PeriRx.  *ECF 1, ¶ 130; ECF 71,

¶ 133*.  PeriRx continued to press these allegations in its Complaint and in opposition to The

Regents' motion to dismiss, requiring extensive briefing before they were dismissed as barred by

the December 19, 2014, Release.  *See ECF 62, ¶ 27*.

The Regents should be awarded reasonable attorneys' fees in connection with responding

to each of these factually and legally baseless allegations brought by PeriRx.

### C.     PeriRx's Failure to Disclose the Release and Withdraw Barred Claims

Despite filing a 100-page Complaint with voluminous and rambling allegations going

back over ten years, PeriRx concealed the existence of the Release granted by PeriRx to RNA

via the First Amendment.  *ECF 43-12, § 17*.  While PeriRx's Complaint included a section on

the First Amendment (*ECF 1* at 21-22), referenced it twenty-three times, and cited to § 18 from

the same page as the § 17 Release (*id*. at 22; *ECF 35-15 at 18*), PeriRx failed to inform the Court

or The Regents about the Release that precluded the majority of PeriRx's claims. PeriRx also initially concealed the First Amendment by not filing a copy with the original Complaint.

The Regents did not have a copy of the First Amendment between RNA and PeriRx, and eventually obtained one from counsel for RNA on July 28, 2020, three days before The Regents' deadline to answer or move to dismiss. *See ECF 48-6.* The Regents' counsel immediately wrote to PeriRx's counsel and demanded a meet and confer. *Id.* PeriRx's counsel declined, and instead responded that it was somehow a lack of diligence on The Regents' part that The Regents was not aware of the Release. *See ECF 48-7.* This is nonsensical given that the Release was in an agreement to which The Regents was not a party.

Rather than own up to its baseless assertions, once The Regents brought the Release to the attention of the Court, PeriRx responded that The Regents held "a proverbial gun to [PeriRx's] head" and "refus[ed] to give PeriRx's [*sic*] further extensions of time if PeriRx did not agree to the release language." *ECF 40 at 12-13.* Nothing advanced or uncovered in discovery supports PeriRx's "gun to their heads" allegation. In the ECF 62 Order, the Court dismissed the majority of PeriRx's bases for its claims against The Regents based on the Release.

PeriRx's concealment of the Release, failure to engage in a meet and confer once the Release was discovered (*ECF 48-1, ¶¶ 8-11*), and refusal to withdraw the factual bases for its claims that had been wiped away by the Release warrant awarding The Regents reasonable fees in connection with briefing its first motion to dismiss.

### D.    PeriRx's Pleading and Maintenance of Barred Claims

Sanctions under 28 U.S.C. § 1927 do not require a finding that the lawsuit was filed in bad faith. *See Alphonso v. Pitney Bowes, Inc.*, 356 F. Supp. 2d 442, 452 (D.N.J. 2005). Continuation of a suit, or some aspect of it, after the attorney learns that it lacks merit is sufficient for sanctions to attach. *Id.* (citing *Murphy & Housing Authority & Urban*

13

*Redevelopment Agency*, 158 F. Supp. 2d 438, 450 (D.N.J. 2001) (continued pursuit despite a dearth of any supporting evidence) and *Matthews v. Freedman*, 128 F.R.D. 194, 207 (E.D. Pa. 1989) (continuing after learning claims were barred by the statute of limitations)).

    It should have been and is evident to any attorney that the bulk of the claims in PeriRx's Complaint are barred by the applicable statutes of limitations.  The Regents' pre-motion letter prior to its first motion to dismiss explained in detail how and why PeriRx's various factual allegations were barred.  *ECF 48-2 at 3-5.*  Key among these were PeriRx's allegations relating to oral cancer and lung cancer that arose well before any applicable statutes of limitations, as explained in The Regents' pre-motion letter and briefing.  PeriRx persisted, which required two rounds of motion to dismiss briefing.  PeriRx's tolling argument contended that all of the alleged wrongdoings over several years with respect to various indications, patents, clinical studies, and technologies were one continuous violation, which is a legally and logically unsound proposition that could not have been made in good faith.  *ECF 40 at 7-10.*  Such disregard for statutes of limitation evidences PeriRx's bad faith.  *Alphonso*, 356 F. Supp. 2d at 454 (citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Actions*, 278 F.3d 175, 188 (3d Cir. 2002)); *see also Loftus v. SEPTA*, 8 F. Supp. 2d 458, 462 (E.D. Pa. 1998) (awarding sanctions under 28 U.S.C. § 1927 and noting that an attorney's obligation to the court must be discharged with great care).

    **E.**    **Proceeding In the Face of The Regents' Detailed Letter**

    The Court issued its Decision on The Regents' Motion to Dismiss on December 3, 2020, which dismissed seven of the nine causes of action against The Regents.  *See ECF 62.*  The Regents hoped PeriRx would abandon its futile attempt to reach The Regent's purse strings, but the January 5, 2021, conference among the Court and the Parties revealed PeriRx's intent to maintain the fight.  *See ECFs 63, 68, 69.*

    In an effort to conclude the case, on January 11, 2021, The Regents sent a detailed letter

to PeriRx.  *See ECF 119-36*.  The letter put PeriRx and its counsel on notice of Rule 11.  *Id., pp. 1-2, 14; see also Murphy*, 158 F. Supp. 2d at 451 (analyzing conduct to determine at what point in time the complained conduct amounted to unreasonable multiplication of the proceeding).  The letter was clear in its introduction as to why PeriRx should not maintain this litigation against The Regents:

> Before turning to the facts, The Regents wishes to highlight for PeriRx two key concepts.  First, the patent licensing among the entities in this dispute flowed in one direction and one direction only:  The Regents → RNA → PeriRx.  That is, The Regents licensed certain patent families to RNA who, in turn, licensed those families and certain services to PeriRx.  If The Regents did not license a given patent family to RNA, then RNA had no right to (and did not) license to PeriRx.  Second, PeriRx's papers often and erroneously mention "licensed technologies."  The Regents never licensed a technology.  Not once.  Instead, The Regents licensed specific, clearly identified, and delineated families of patents and applications.  A fundamental tenet of patent law is that a patent gives you only the right to exclude others from practicing the claimed invention, and nothing more.  Once PeriRx stops willfully ignoring these two, key concepts, PeriRx hopefully will better understand why it cannot in good faith and without violating Rule 11 maintain any claims against The Regents.  If PeriRx continues to pursue its unsupportable claims, The Regents will seek sanctions under all applicable rules.

*Id., p. 2*.  The letter walks through five overarching issues in the case:  (1) that RNA is not the alter ego of The Regents (*see id., pp. 2-6*), (2) that there are no overlapping licenses for the POC Patents (*see id., pp. 6-10*), (3) that PeriRx and RNA had no license rights to EFIRM patents (*see id., pp. 10-11*), (4) that PeriRx's allegations with respect to the Insulin Resistance Provisional cannot state a claim (*see id., pp. 12-13*), and (5) that the lung cancer patent allegations were no longer in the case and could not support a claim.  *See id., p. 14.*  The Regents also provided evidence plainly demonstrating that PeriRx's alter ego allegations and insulin resistance assignment allegations were incorrect.

PeriRx responded by filing its FAC and sending a one-page letter, which cautioned The Regents against "frivolous motion practice."  *See Ex. 9.*  Rather than respond thoughtfully to each of the five overarching issues, PeriRx doubled-down and kept litigating.  PeriRx's reaction

typifies its behavior throughout this litigation – willful ignorance – and The Regents seeks to have such behavior formally admonished.  *See Sosinavage*, 2019 WL 494824, at *3 (Rule 11 "establishes an ongoing duty to cease litigation of claims that are no longer tenable.").

      **F.**    **The FAC and Second Motion to Dismiss**

      Unlike Rule 11, imposing sanctions under 28 U.S.C. § 1927 requires a showing of bad faith.  *Ally*, 2012 WL 4473240, at *10.  Bad faith can be established by showing the intentional advancement of baseless contentions that are made for an ulterior purpose, such as harassment or delay.  *Id.* (quoting *Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir. 1986)).  "When a claim is advocated despite the fact that it is patently frivolous or where a litigant continues to pursue a claim in the face of an irrebuttable defense, bad faith can be implied."  *Ally*, 2012 WL 4473240, at *10 (quoting *Loftus*, 8 F. Supp. 2d at 461).  PeriRx and its counsel filed the FAC advancing the same allegations plainly dismissed by the Court (ECF 62), which prompted The Regents to file a second motion to dismiss.  That PeriRx proceeded, despite having been told of the flaws in their theories, evidences the requisite bad faith.

      As explained in The Regents' briefing on its second motion to dismiss (filings in ECF Nos. 75 and 84), while the Court in ¶ 27 of its ECF 62 Order clearly dismissed all allegations regarding failures to obtain inventor assignments for the Diabetes Patent and Insulin Resistance Provisional and all allegations relating to the Lung Cancer Patent, PeriRx advanced the exact same allegations in the FAC.  *See ECF 75-1 at 1.*  The Regents' sent PeriRx a detailed letter on January 19, 2021, explaining where and why the allegations were dismissed, why no tolling argument applied (and such tolling arguments were already rejected by the Court), and requested withdrawal of the re-pled claims.  *Ex. 11.*  PeriRx refused, resulting in the Court again dismissing these factual bases from PeriRx's claims.  *See ECF 87.*  The Regents should be awarded reasonable attorneys' fees in connection with its second motion to dismiss.

### G.    Woefully Deficient Interrogatory Responses

PeriRx has failed to present its case despite clear interrogatory requests.  That failure is more pronounced because of the unnecessary discovery disputes surrounding even the slim answers received by The Regents.  PeriRx's bad faith conduct is deserving of sanctions.

On December 30, 2020, The Regents served its first set of interrogatories (Nos. 1-13) ("First Interrogatories").  *See ECF 91-5*.  On January 29, 2021, PeriRx served its objections and responses.  *Id*.  PeriRx *failed to answer a single interrogatory*.  *Id*.  PeriRx's "objections" ranged from too many interrogatories via a fallacious "discrete subparts" argument, to interrogatories citing to paragraphs of the Original Complaint rather than the FAC, to objections based on confidentiality regarding Interrogatories 3-5 and 10 when PeriRx, as explained above in Section III.E, refused to cooperate in entry of a Protective Order to govern confidentiality in this litigation.  *Id., pp. 2, 5-7*.  Immediately upon receipt of the deficient "responses," The Regents requested a meet and confer with PeriRx.  *See Ex. 12*.

On February 1, 2021, The Regents provided a detailed description of the issues with PeriRx's overbroad objections and non-response to the First Interrogatories.  *See ECF 91-6*.  On February 4, the parties met and conferred regarding the First Interrogatories.  The Regents via counsel made clear that it believed PeriRx had taken absurd litigation positions regarding the discrete subparts argument.  Nevertheless, The Regents walked through and tailored each interrogatory to the supposed satisfaction of PeriRx's counsel.  By email dated February 5, The Regents summarized the meet and confer and provided Revised First Interrogatories.  *See ECF 91-7, ECF 91-8*.  The redline of the First Interrogatories versus the Revised First Interrogatories demonstrates (1) that the discrete subpart argument had no sound basis, and (2) that The Regents took dramatic steps to eliminate the obfuscation by PeriRx.  *Id*.  Counsel for The Regents made clear that a proper response to these interrogatories would include all of the supposed discrete

subparts identified by PeriRx.  The first interrogatory provides a clear example and is set forth in redlined fashion here:  "1.  Describe in detail the factual and legal basis for any alleged breach of contract that you assert against The Regents~~, including the specific contract and contractual provision(s) that you allege have been breached, and the manner in which The Regents' acts or omissions cause the alleged breach~~."  *See id., pp. 13, 27* [of the .pdf].

Under the PeriRx view, the original interrogatory consisted of at least three discrete parts, describing the legal and factual basis, naming the specific contract and contractual provisions, and detailing the way The Regents supposedly breached the contract and provisions.  Rather than burden the Court, The Regents broadened each interrogatory and noted the requirements for a proper response.

On February 19, 2021, PeriRx responded.  *See ECF 91-9.*  On March 2, 2021, counsel for The Regents wrote to PeriRx and highlighted how the responses were deficient for failing to provide even basic requested information.  *See ECF 91-10.*  Interrogatory 1 asked for the factual and legal bases for PeriRx's breach of contract claims against The Regents, *i.e.*, the most fundamental and important aspect of this litigation.  *ECF 91-9, p. 4.*  Rather than supply the requested information, nearly a year into the litigation, PeriRx failed to identify a single section of any agreement that was allegedly breached.  *Id., pp. 4-6; ECF 91-10, p. 1.*  As for Interrogatory 2, PeriRx simply recited allegations from the Complaint without providing any factual or legal bases to support PeriRx's contention that RNA was an alter ego and shell of The Regents.  *ECF 91-9, pp. 6-9; ECF 91-10, p. 2.*  As for Interrogatories 3-5, which sought information on PeriRx's interactions with third parties, PeriRx offered no dates of when the alleged interactions occurred, no citation to evidence, no identification of individuals with knowledge about the interactions, nor any explanation of how or why the alleged discussions are

relevant. *ECF 91-9, pp. 9-12; ECF 91-10, pp. 2-3*. Interrogatories 8 and 9 sought to have PeriRx finally explain the alleged overlap between patents licensed in the UCLA Agreement and the Aruras Agreements and alleged overlapping licenses on the EFIRM Patent. *ECF 91-9, pp. 13-15*. PeriRx refused to identify or explain the alleged overlap. *ECF 91-9, pp. 13-15; ECF 91-10, p. 3*.

The Regents wrote PeriRx two deficiency letters to which PeriRx refused to respond, relying instead on meet and confers. *See ECF 91, p. 5; ECF 91-9, -10*. The parties met and conferred twice. Despite all of these efforts, PeriRx failed to respond, requiring The Regents to file a motion to compel to secure the most basic information about PeriRx's allegations. *See ECF 91*. The Court granted The Regents' motion and ordered PeriRx to fully respond to Interrogatories 1-5 and 8. *See ECF 91 and 93*.

From wholly failing to answer the initial interrogatories, to providing deficient responses to the revised interrogatories, to simply cross-referencing expert reports, PeriRx's acts and omissions wasted The Regents' resources and reimbursement is sought. *See ECF 135 at 14-16*.

### H. Misrepresentations Surrounding Kevin J. Kelly

PeriRx made continued misrepresentations regarding the involvement of its counsel in this matter, Mr. Kevin J. Kelly. The Court was briefed on difficulties trying to serve a subpoena on Mr. Kelly (*see ECF 85*), key bad acts by PeriRx and its counsel including: (1) PeriRx's misrepresentation that "Mr. Kelly did not have any involvement with the drafting and negotiation of the various agreements with The Regents." (*ECF 85-03*); (2) PeriRx's refusal to resolve the subpoena issue by providing a Declaration by Mr. Kelly that he has no relevant evidence (*ECF 85, p. 5; ECF 85-04; ECF 85-05; see also Ex. 14 at 193:25-198:14*); (3) PeriRx's continued refusal to resolve the Kelly subpoena issue regarding documents (*ECF 85, pp. 7-8; ECF 85-06; ECF 85-07*); (4) Mr. Kelly's failure to respond to counsel's emails, despite being an attorney of

record in this dispute, as an attorney with Harras Bloom & Archer LLP, and being the one who

signed the original Complaint (*ECF 85, pp. 8-9; ECF 85-08; see also Ex.14 at 6:14-25, 9:3-10*);

and (5) Harras Bloom's refusal to accept service for Mr. Kelly and when asked again whether

service would be accepted, counsel for PeriRx *affirmatively stated* "I checked with my staff and

no one came to my office on Friday or any other day to attempt to serve a subpoena upon Mr.

Kelly," which wholly contradicts information received from the process server:

```
Status:
01/28/21 04:32PM  THE SERVER ATTEMPTED AT THE GIVEN ADDRESS AND CAME
IN CONTACT WITH LINDA AGNEW, WHO STATED THAT KEVIN JOSEPH KELLY DOES
NOT WORK AT THIS OFFICE AND HE IS NOT THERE.  SHE WOULD NOT GIVE ANY
FURTHER DETAILS.  NO FURTHER INFORMATION KNOWN. SERVER RETURNING
THIS W.O. FOR FURTHER REVIEW
```

and then PeriRx changed its tune to "[s]omeone *did* call the office I believe late Thursday

afternoon asking if Mr. Kelly was there *and was told by me* Mr. Kelly was not here and didn't

maintain a physical office in Melville."  (*ECF 85, pp. 9-10; ECF 85-09* (emphases added)).

When the Opposition to PeriRx's Motion for Protective Order was filed, PeriRx had not

yet produced documents (*see ECF 85, p. 5*) so all The Regents had was publicly-available

information and Exhibit Q to RNAmeTRIX's Motion to Dismiss.  *See ECF 85, pp. 10-11* (citing

*ECF 77-19*).  Now that the other parties have produced documents and Mr. Kelly has been

deposed, it is clear that Ms. Agnew's affirmative statement, on behalf of PeriRx, that "Mr. Kelly

did not have any involvement with the drafting and negotiation of the various agreements with

The Regents" (*ECF 85-03*) is false.  *See, e.g., Ex. 13* (Mr. Kelly looks forward to "re-engaging in

this [Amendment] process")*, ECF 119-57* (wherein Mr. Kelly asks that both PeriRx's and

Aruras' rights be incorporated/combined "into this one contract."), *ECF 119-83 to ECF 119-87,*

*Exs. 15-18, ECF 119-81* (correspondence and memoranda regarding amendments to the RNA-

PeriRx Agreement).  The Regents invites the Court's attention to the full transcript of Mr.

Kelly's deposition, which highlights the lengths to which PeriRx goes to obscure Mr. Kelly's extensive involvement in negotiating amendments to the Agreement between PeriRx and RNA. *See Ex. 14 at 28:6-18, 199:14-200:7* (confirming the memos Mr. Kelly sent to RNA conveyed Mr. Swanick's and Dr. Martin's views)*, 69:17-71:23, 73:9-79:8, 80:8-81:6, 82:16-83:25, 84:14-85:19, 86:22-87:11, 98:7-103:9* (Mr. Kelly addressing the "issues to be ironed out to get the Amendment signed and put to bed" (*Ex. 13*))*, 103:11-104:23, 109:15-114:3* (*Ex. 15*)*, 115:10-120:12* (verifying Mr. Kelly's December 5, 2013, memorandum sought to have certain sections of the Agreement amended (*Ex. 15*))*, 125:1-7* (*Ex. 16*)*, 126:3-128:13* (confirming it was Mr. Kelly's responsibility to convey concerns over the Agreement to RNA (*ECF 119-81*))*, 135:22-137:14* (*ECF 119-83, ECF 119-84*)*, 139:10-140:7* (*id.*)*, 142:11-147:11* (Mr. Kelly confirming he was involved in drafting and sending memos to RNA in hopes of reaching agreement with RNA (*ECF 119-85, ECF 119-86*))*, 155:11-156:17, 161:19-162:13, 169:17-173:3, 180:15-185:7, 187:22-188:6, 189:1-192:4, 192:25-193:17, 194:12-200:7* (*ECF 85-5*)*, 202:25-204:15, 206:21-208:12.* Mr. Kelly's transcript also exemplifies the wholly-inappropriate objections counsel for PeriRx has made over the course of this litigation. *See, e.g., Ex. 14 at 21:7-22:17, 24:18-25:19, 28:6-10, 29:6-10, 30:20-36:1, 43:21-44:19, 47:19-48:6, 48:15-20, 50:15-51:20, 51:22-58:14* (regarding ECF 1)*, 64:16-68:2, 150:2-152:6* (wherein *Hall v. Clifton Precision*, 150 F.R.D. 525 (E.D. Pa. 1993) was specifically brought to Ms. Agnew's attention)*, 169:20-170:16, 183:13-184:1, 185:8-187:20, 190:9-191:24, 196:10-197:15, 199:14-200:7, 201:17-202:11, 206:21-207:22.*

PeriRx and its counsel should be sanctioned for misrepresenting Mr. Kelly's extensive involvement in negotiating amendments to the Amended and Restated Exclusive License Agreement between PeriRx and RNA and for frustrating The Regents' request to depose Mr.

Kelly as a fact witness.  *See ECFs 81, 85, 88.*

I. **Failing to Check Public Resources and the Production**

Another key component to PeriRx's willful ignorance and unnecessary protraction of this dispute is PeriRx's failure to take advantage of readily-available, public resources, let alone the production in this case.  *See supra Section III.B.*  PeriRx's discovery responses are rife with failures of diligence.  For example, on May 23, 2021, The Regents served eighty-seven (87) Requests for Admission.  *See ECF 119-106.*  Included within those requests are admissions regarding:  (1) the POC Patents were disclosed to the PTO during prosecution of the EFIRM Patent (#46); and (2) the examiner stated certain things in the reasons for allowance of the claims of the EFIRM Patent (#53).  *See id., pp. 9-11.*  PeriRx's response to each of those requests, served on June 22, 2021, included the refrain "Cannot admit or deny as PeriRx was not involved in the patent prosecution process of the EFIRM Patent."  *Id.*  PeriRx's responses are absurd on their face – one need not be "involved" in the prosecution of a given patent application to determine what occurred.  The U.S. Patent and Trademark Office has a public interface wherein prosecution of a given patent application is accessible.  A search of the U.S. Patent Office's Public Patent Application Information Retrieval system reveals information ranging from the actual file wrapper to information on related cases to assignment information.  Had PeriRx heeded The Regents' recommendation to consult with an intellectual property attorney, PeriRx could have fully answered these requests for admission.

Another common refrain in PeriRx's responses was "[i]n addition, such documents with respect to the full history of the prosecution of the EFIRM Patent were demanded but were not produced by The Regents in this litigation or at any other time to PeriRx."  *See id., pp. 9-11.*  To the contrary, the full file history *was* produced to PeriRx on March 15, 2021, under Bates Nos. UC011175-725; and the full history was publicly available to PeriRx, including even before

PeriRx filed this litigation.  That PeriRx had in its possession the "full history of the prosecution of the EFIRM Patent" for *more than three months* before the responses were served evidences PeriRx's failure to take this litigation and its duties under Rule 11 seriously.

PeriRx also responded to Requests 49 and 50 with "Deny to the extent that a PCT Application is still pending . . . ."  *ECF 119-106, pp. 9-10.*  P̲atent C̲ooperation T̲reaty system applications are international patent application placeholders for approximately thirty-one months.  By then, the PCT application must enter the national stage in each country where patent protection is sought or the application lapses.  The original PCT application itself will *never* issue as a patent – it is simply a clerical vehicle from which one or more national stage applications may be filed.  *See, e.g., https://www.wipo.int/pct/en/faqs/faqs.html*  Had PeriRx consulted with a patent attorney it would have realized its responses that a "PCT Application is still pending" made no sense.

PeriRx's failure to conduct even the most rudimentary search of publicly-available resources and of documents produced in this case has caused The Regents to expend unnecessary time and resources.  *See Sosinavage*, 2019 WL 494824, at *4 (noting that "counsel may not continue to rely on a mistaken factual or legal position in subsequent submissions if, after discovery, it becomes obvious that such a position is no longer tenable.").

> **J.      Protesting a Reasonable Protective Order**

The Regents provided PeriRx with a draft protective order in December of 2020 that was substantially the same as the protective order ultimately entered on stipulation five months later in May 2021.  *Ex. 3.*  PeriRx, however, adopted the baseless position that The Regents' draft protective order would give The Regents' "*carte blache* to designate anything it wants as confidential," despite the proposed order being a narrowly-tailored confidentiality order based on the default order of the District of New Jersey.  *Ex. 4.*  That PeriRx ultimately agreed to a

protective order substantially the same as the one provided five months prior, yet made The Regents (and RNA) waste time and resources on needless negotiation of provisions that PeriRx contended did not apply to the case (and therefore should have been a non-issue), evidences bad faith. *See ECFs 74, 78; see Exs. 5-8.* The Regents should be awarded fees for attorney time consumed by PeriRx's intransigence on the protective order.

###### K.  Failure to Consult with a Patent Attorney

Shortly after The Regents filed its second Motion to Dismiss, PeriRx wrote to The Regents and demanded that UCLA withdraw its motion. *See Ex. 10.* The Regents responded by letter and reiterated to PeriRx fundamental concepts of patent law, including the nature of provisional patent applications and assignments, as well as facts relating to Dr. Joshipura and the impact of the release on the lung cancer allegations. *See Ex. 2, pp. 1-2; see also Ex. 11.* This litigation is not a patent matter, *per se*, but patent law is integral to the license agreements PeriRx alleges were breached. Accordingly, the Regents' letter also included a recommendation to consult with an intellectual property attorney, which is a repeat of a recommendation made by The Regents during the July 17, 2020, pre-motion conference for the first Motion to Dismiss. *See Ex. 2, p. 2.*

"[T]here is a point beyond which zeal becomes vexation, the 'novel' approach to a legal issue converts to frivolity and steadfast adherence to a position transforms to obdurateness." *Alphonso*, 356 F. Supp. 2d at 454 (quoting *Rodriguez v. Bank Cent.*, 155 F.R.D. 403, 407 (D.P.R. 1994)). A reasonable review of the patent posture of the case just prior to the filing of the Complaint would likely have obviated the entire litigation against The Regents. Much of the first Motion to Dismiss and the entire second Motion to Dismiss could have been avoided had PeriRx's counsel understood fundamental concepts of patent law. Failure by PeriRx and its counsel to prepare for and study the underlying patent issues and/or consult with a patent agent

or attorney have severely harmed The Regents.

      **L.**     **PeriRx's Pattern of Activity in this Case Should Be Dissuaded**

"This is an unfortunate and all too predictable end to a lawsuit that should never have been filed" against The Regents. *Doherty v. Allstate Indem. Co*., No. 15-05165, 2019 WL 4751922, at \*1 (E.D. Pa. Sept. 30, 2019). When deciding whether to impose sanctions, courts turn to the Advisory Committee's notes on Rule 11, which set out several relevant factors to consider. *See Banks v. Schutter*, No. 08-2677, 2009 WL 113743, at \*2 (E.D. Pa. Jan. 15, 2009) (citing *Reynolds v. Metro Life Ins. Co.*, No. 3:04-232, 2007 WL 603012, at \*10 (W.D. Pa. Feb. 22, 2007)). PeriRx's pattern of conduct has been at least negligent and at times willful (*see ECF 135 at 16-21*) and that pattern has infected every stage of this litigation, including violating the Scheduling Order by serving two new expert reports on the day discovery closed. *See ECFs 108, 108-1, 112, 114*. Awarding The Regents its attorneys' fees and costs will dissuade counsel and future litigants from abusing the adversarial process as has been done here.

**IV.**    **CONCLUSION**

The Regents and its counsel in this case appreciate that allegations of a Rule 11 violation are not to be made lightly. The totality of PeriRx's and PeriRx's counsel's actions, from the initial complaint to the present, warrant this motion. The Regents respectfully requests that the Court enter sanctions against PeriRx and its counsel and allow The Regents to recoup the fees, costs, and expenses associated with this unwarranted and unnecessarily protracted litigation.

Dated:  November 10, 2021                Respectfully submitted,

_/s/_ Dennis J. Butler

Dennis J. Butler (PA ID No. 91564)
Keith A. Jones (PA ID No. 313116)
Philip L. Hirschhorn (admitted _pro hac vice_)
Erin M. Dunston (admitted _pro hac vice_)
Aaron L. J. Pereira (admitted _pro hac vice_)
Panitch Schwarze Belisario & Nadel LLP
Two Commerce Square
2001 Market Street, Suite 2800
Philadelphia, PA 19103-7044
Tel: (215) 965-1330
Fax: (215) 965-1331

dbutler@panitchlaw.com
kjones@panitchlaw.com
phirschhorn@panitchlaw.com
edunston@panitchlaw.com
apereira@panitchlaw.com

_Counsel for The Regents of the University of California_

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document is being filed electronically with the Court using the Electronic Case Filing (CM/ECF) system.  Notice of this filing will be sent to all counsel of record by operation of the Court's CM/ECF system, through which a copy will be available for viewing and downloading.

Dated:  November 10, 2021                By:    /s/ Dennis J. Butler
                                                      Dennis J. Butler