THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------------

|  |  |  |
|---|---|---|
| PERIRX, INC. | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil Action No: 2:20-cv-02212-JDW |
| | ) | |
| THE REGENTS UNIVERSITY OF | ) | |
| CALIFORNIA, EZLIFE BIO INC., ARURAS | ) | |
| HOLDINGS, LLC, DAVID T. WONG, and | ) | |
| RNAMETRIX, INC. | ) | |
| *Defendants*. | ) | |

------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE REGENTS OF
THE UNIVERSITY OF CALIFORNIA'S MOTION FOR SANCTIONS**

HARRAS BLOOM & ARCHER LLP
445 Broadhollow Road, Suite 127
Melville, NY 11747
(631) 393-6220

*Counsel for Plaintiff PeriRx, Inc.*

Of Counsel:

Kevin J. Kelly, Esq.
Linda S. Agnew, Esq. (*pro hac vice*)
Tara D. McDevitt, Esq. (*pro hac vice*)

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . .   ii

PRELIMINARY STATEMENT  . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . .   1

RELEVANT LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

STATEMENT OF FACTS AND PROCEDURAL HISTORY. . . . . . . . . . .   3

ARGUMENT        UCLA's MOTION SHOULD BE DENIED IN ITS
ENTIRETY AS NEITHER PERIRX NOR ITS
COUNSEL HAS ENGAGED IN ANY
SANCTIONABLE CONDUCT. . . . . . . . . . . . . . . . .   7

    A.    All Claims That Do Not Involve The Signing of a
Paper Must Be Dismissed Under Third Circuit
Authority as Such Alleged Acts Do Not Fall
Within The Purview Of Rule 11. . . . . . . . . . . . . . . .   7

    B.    UCLA's Continued Willful Ignorance of the Main
Thrust of PeriRx's Claims Against UCLA . . . . . . . .   9

    C.    UCLA's Attempt to Blame Its Lack of Diligence on
PeriRx Should Not Be Countenanced by This Court
and UCLA Once Again Fails to Prove Actual
Sanctionable Conduct . . . . . . . . . . . . .. . . . . . . . . . . .   15

    D.    There Were No "Barred Claims" and PeriRx Advanced
Multiple Objectively Reasonable Arguments as to
Tolling of Statutes of Limitations and in an Attempt
to Invalidate the Release . . . . . . . . . . . . . . . . . . . . . .   16

    E.    UCLA's January 11, 2021 Letter, Sent Prior to Any
Discovery Being Conducted in This Case, Is Probative
of Nothing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

    F.    No Intentional Misrepresentations Were Made by
PeriRx . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

    G.    PeriRx Should be Awarded its Counsel Fees in Having
to Defend This Baseless Motion . . . . . . . . . . . . . . . .   24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..   25

i

# TABLE OF AUTHORITIES

Page(s)

*Bensalem Twp. V. Int'l Surplus Lines Ins. Co.,* 38 F.3d 1303
    (3rd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     3

*Brubaker Kitchens, Inc. v. Brown,* 280 Fed. Appx. 174 (3d Cir. 2008) . . . . .     2

*Doering v. Union Cnty. Bd. Of Chosen Freeholders,* 857 F .2d 191
    (3d Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     3, 5, 7

*Eavenson, Auchmuty & Creenwald v. Holtzman,* 775 F .2d 535
    (3d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     4

*Gaiardo v. Ethyl Corp.,* 835 F .2d 479 (3d Cir. 1987) . . . . . . . . . . . . . . . . .     *Passim*

*Grider v. Keystone Health Plan Cent., Inc.,* 580 F .3d 119
    (3d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     5

*Horizon Unlimited, Inc. v. Richard Silva & SNA, Inc.,* No. 97-cv-7430,
    1999 WL 675469 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     5

*Knipe v. Skinner,* 19 F .3d 72 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . .     5

*Mary Ann Pensiero, Inc. v. Lingle,* 847 F.2d 90 (3d Cir. 1988).. . . . . . . . . . .     2, 3, 16, 17

*Poltrock v. N.J. Auto. Accounts Mgmt. Co.,* No. 08-cv-1999, 2008 WL
    5416396 (D.N.J. Dec. 22, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . .     4

*Schering Corp. v. Vitarine Pharm., Inc.,* 889 F .2d 490 (3d Cir. 1989) . . . .     5

*Spinks v. Equity Residential Briarwood Apartments*, 171 Cal.App.4th
    1004, 90 Cal.Rptr.3d 453 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . .     10

*StrikeForce Techs., Inc. v. WhiteSky, Inc.,* No. 13-cv-1895, 2013 WL
    5574643 (D.N.J. Oct. 9, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     3, 17, 20

*Teamsters Local Union No. 430 v. Cement Exp., Inc.,* 841 F .2d 66
    (3d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     4, 5, 7, 16

**Rules and Statutes**

Fed.R.Civ.P. 11(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     2

## PRELIMINARY STATEMENT

Since the inception of this lawsuit, Defendant The Regents of the University of California ("UCLA") has done its level best to obfuscate the real issues before the Court and promote a false narrative that has no basis in law or in fact.  UCLA's latest stunt styled as a "Motion for Sanctions" is no exception.  By this motion, UCLA will clearly go to any lengths to avoid its liability to Plaintiff PeriRx, Inc.("PeriRx") which is undoubtedly the third-party beneficiary of the UCLA Agreement.  Curiously, the term "third-party beneficiary' is not even mentioned, never mind discussed, by UCLA in this absurd motion, because it is not in keeping with its false narrative.  UCLA's failure to even mention this claim is a tacit admission of its merit for which PeriRx is entitled to summary judgment as set forth in its summary judgment motion.

With respect to PeriRx's alter-ego claim, UCLA moved to dismiss the alter ego claim under FRCP 12(b) and it was denied by this very Court.  As set forth in PeriRx's motion for summary judgment, and as discovery has confirmed, RNA is nothing more than the alter-ego of UCLA under the applicable California law.

The balance of UCLA's motion is relegated to arguments concerning tangential matters which do not form the basis of PeriRx's motion for summary judgment.  Other ridiculous arguments are made concerning the Kevin Kelly subpoena back in February of 2021 and circumstances surrounding a protective order which motion was denied by the Court because UCLA woefully failed to meet the standard under Third Circuit Authority.  One can argue that the protective order motion made by UCLA was utterly frivolous.

An alleged combined eighty (80) years of experience does not necessarily translate into good judgment or even good faith for that matter.  As will be demonstrated herein, this motion is brought in bad faith, is patently absurd and utterly frivolous.  Despite UCLA's glaring failure to

1

include them in the motion, PeriRx responded to UCLA's repeated abusive demands that it

withdraw its viable action which constitute nothing more than a thinly veiled attempt to harass

PeriRx and run up its legal fees.  This motion is no different.  Accordingly, PeriRx should be

entitled to recover its attorneys' fees in having to defend this bad-faith motion.

## RELEVANT LEGAL STANDARD

Rule 11, in relevant part, provides:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

*See* Fed.R.Civ.P. 11(b)(1)-(3). The standard applied by the Court when determining whether a

party has violated Rule 11 is an objective standard of reasonableness under the circumstances.

*See Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 92 (3d Cir. 1988); *see also Brubaker*

*Kitchens, Inc. v. Brown*, 280 Fed. Appx. 174, 185 (3d Cir. 2008) ("It is well-settled that the test

for determining whether Rule 11 sanctions should be imposed is one of reasonableness under the

circumstances, the determination of which falls within the sound discretion of the District

Court."). The Third Circuit Court of Appeals has stated that "[a]n inquiry is considered

reasonable under the circumstances if it provides the party with an objective knowledge or belief

*at the time of the filing of a challenged paper*' that the claim was well-grounded in law and fact."

2

*Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1314 (3rd Cir. 1994) (citations and internal quotation marks omitted and emphasis supplied).

The purpose of Rule 11 is "to curb abusive litigation tactics and misuse of the court's process." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987).   As the Third Circuit has emphasized, however, Rule 11 is meant to penalize a lawyer for irresponsible and abusive tactics, not to penalize him for bringing a weak claim in good faith. *See Mary Ann Pensiero, Inc.*, 847 F.2d at 94-94 ("Rule 11 targets abuse—the Rule must not be used as an automatic penalty against an attorney or a party advocating the losing side of a dispute.") (citation and internal quotation marks omitted).  Rule 11 "should not be applied to adventuresome, though responsible, lawyering which advocates creative legal theories." *Id.*  Further, "[t]he rule is not an appropriate vehicle for resolving legal or factual disputes." *StrikeForce Techs., Inc. v. WhiteSky, Inc.*, No. 13-cv-1895, 2013 WL 5574643, at *4 (D.N.J. Oct. 9, 2013) (citations omitted).

Rule 11 sanctions should be issued "only in the 'exceptional circumstance', where a claim or motion is patently unmeritorious or frivolous." *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988) (quoting *Gaiardo*, 835 F.2d at 483). "Rule 11 sanctions should not be viewed as a general fee shifting device." *Gaiardo*, 835 F.2d at 483.  The Rule's purpose "is not wholesale fee shifting but correction of litigation abuse," and sanctions "do not automatically or usually follow an adverse judgment or ruling. Substantially more is required." *Id.* The advisory committee note to the 1983 Amendment to Rule 11 explains that "[t]he rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." That an argument ultimately failed on the merits does not transform its filing into sanctionable conduct. *See Gaiarado*, 835 F.2d at 483 ("Litigants misuse [Rule 11] when sanctions are sought against a party or counsel whose only sin was being on the unsuccessful side of a ruling or

3

judgment.  Restated, Rule 11 sanctions … do not automatically or usually follow an adverse judgment or ruling.  Substantially more is requited."); *see also Poltrock v. N.J. Auto. Accounts Mgmt. Co.,* No. 08-cv-1999, 2008 WL 5416396, at *32 (D.N.J. Dec. 22, 2008) (declining to impose sanctions despite the failure of an argument to extend well-settled law under limited circumstances).

Of importance, Rule 11 sanctions are proper only in situations which involve the signing a paper.  *Teamsters Local Union No. 430 v. Cement Exp., Inc.*, 841 F.2d 66, 68 (3d Cir. 1988) (*citing Gaiardo*, 835 F.2d at 484).  The Third Circuit has cautioned that in testing whether the paper was signed in contravention of Rule 11, "the court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading ... was submitted." *Gaiardo*, 835 F.2d at 484 (*quoting Eavenson, Auchmuty & Greenwald v. Holtzman*, 775 F.2d 535, 540 (3d Cir. 1985)).  For example, Rule 11"should not be invoked against an attorney who fails to dismiss a case after the opposing attorney submits evidence that a statute of limitations or res judicata bars the suit." *Gaiardo*, 835 F.2d at 484.   "The rule focuses on the act of signing the document as a certification that the signer believes in the propriety of the submission and that it has not been filed for an improper purpose." *Id.*

"By its terms Rule 11 does not authorize a sanction for failing to amend or correct a document if information obtained or legal research performed after filing reveals an error. Cases which impose a continuing duty on counsel to make amendments based on knowledge ascertained after filing are not consistent with the Rule." *Id.*  Rule 11 sanctions are appropriate regarding the initiation of a lawsuit only if the filing of the complaint constituted abusive litigation or misuse of the court's process. *Teamsters Local Union No. 430*, 841 F.2d at 68.  "Rule 11 may not be invoked because an attorney, after time for discovery, is unable to produce adequate evidence to withstand

a motion for summary judgment." *Id.* at 69.

"The standard developed by courts for imposition of sanctions under Rule 11 is stringent because such sanctions 1) are in derogation of the general American policy of encouraging resort to the courts for peaceful resolution of disputes, 2) tend to spawn satellite litigation counter-productive to efficient disposition of cases, and 3) increase tensions among the litigating bar and between the bench and the bar." *Doering*, 857 F.2d at 194. Moreover, imposition of Rule 11 sanctions is discretionary. The advisory committee note to the 1993 Amendments to Rule 11 stated, "The court has significant discretion in determining what sanctions, if any, should be imposed for a violation ...."; *see also Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 146 n. 28 (3d Cir. 2009) ("the imposition of sanctions for a violation is Rule 11 discretionary rather than mandatory") (quoting *Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir. 1994)).

"The wisdom of hindsight is to be avoided; the attorney's conduct must be judged by what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *Schering Corp. v. Vitarine Pharm., Inc.*, 889 F.2d 490, 496 (3d Cir. 1989). "When the attorney reasonably relies upon the misrepresentations of a client, the client not the attorney should be sanctioned under Rule 11." *Horizon Unlimited, Inc. v. Richard Silva & SNA, Inc.*, No. 97-cv-7430, 1999 WL 675469, at *4 (E.D.Pa. Aug. 31, 1999). "Counsel is permitted to assume his client is honest with him unless and until circumstantial evidence is obviously to the contrary." *Id.* at *6.

"The growing tendency to extend the Rule beyond its text and intent concerns us, as does the noticeable increase in unjustified requests for sanctions. The Rule is being perverted when used as a tool for harassment rather than as an instrument to prevent abuse." *Gaiardo*, 835 F.2d at 484. "The use of Rule as an additional tactic of intimidation and harassment has become part of the so-called "hardball" litigation techniques espoused by some firms and their clients. Those

5

practitioners are cautioned that they invite retribution from courts which are far from enchanted with such abusive conduct.  A court may impose sanctions on its own initiative when the Rule is invoked for an improper purpose." *Id.* at 485.

      This is exactly what we have here.  Except for its length, UCLA's motion sets forth virtually the identical grounds as UCLA's previous motion served upon PeriRx and its counsel on August 3, 2021.  At that time, PeriRx and its counsel provided the Court with counsel for UCLA's August 3, 2021, email which similarly demanded that PeriRx (and presumably Harras Bloom & Archer) discontinue the action and pay all of UCLA attorneys' fees and expenses[1]. Absent that, UCLA threatened to file the motion which at that time was designed by counsel for UCLA to interfere with counsel for PeriRx's ability to address the respective summary judgment motions filed by UCLA and RNA.   In his August 18, 2021, email, Judge Wolson addressed UCLA threatened sanctions motion and indicated that "Rule 11 is intended to foster discussions among counsel prior to any motion coming before the Court."  Thereafter, in a proper exercise of discretion, the motion was not filed.  Here, the instant motion[2] and UCLA's use of Rule 11 as a "tactic of intimation and harassment" should not be countenanced by this Court and the motion should be denied in its entirety, with PeriRx recovering its attorneys' fees and costs in having to defend this baseless motion.

---

[1] No less than four Panitch Scwarze attorneys appear at every proceeding, deposition, call and conference with Mr. Hirschhorn and Mr. Pereira actively participating in the substantive proceedings.  PeriRx does not consider Mr. Butler's performance at Mr. Koniesczny's deposition or Ms. Dunston's performance at Mr. Kelly's deposition to be substantive proceedings.  They were a waste of everybody's time as reflected by the respective transcripts.
[2] UCLA reserved its motion under the 'Safe Harbor' provision and once again demanded that PeriRx discontinue its action and pay UCLA's counsel fees.  Obviously such an incredulous demand is a non-starter, nor is such a demand meant to foster any meaningful discussion.

# ARGUMENT

## UCLA'S MOTION SHOULD BE DENIED IN ITS ENTIRETY AS NEITHER PERIRX NOR ITS COUNSEL HAS ENGAGED IN ANY SANCTIONABLE CONDUCT

As set forth above, "[l]itigants misuse [Rule 11] when sanctions are sought against a party or counsel whose only sin was being on the unsuccessful side of a ruling or judgment. Restated, Rule 11 sanctions … do not automatically or usually follow an adverse judgment or ruling.  Substantially more is requited." *Gaiardo*, 835 F.2d at 484.  UCLA has utterly failed to show "substantially more" as required and its frivolous sanctions motion should be dismissed.

### A.   All Claims That Do Not Involve The Signing Of A Paper Must Be Dismissed Under Third Circuit Authority As Such Alleged Acts Do Not Fall Within The Purview Of Rule 11

As set forth above, Rule 11 sanctions are proper only in situations which involve the signing of a paper.  *Teamsters Local Union No. 430 v. Cement Exp., Inc.*, 841 F.2d 66, 68 (3d Cir. 1988) (*citing Gaiardo*, 835 F.2d at 484).  The Third Circuit has cautioned that in testing whether the paper was signed in contravention of Rule 11, "the court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading … was submitted." *Gaiardo*, 835 F.2d at 484.  On this basis alone, several arguments in UCLA's motion must fail and these arguments are entirely frivolous. Further, Rule 11 sanctions should be issued "only in the 'exceptional circumstance', where a claim or motion is patently unmeritorious or frivolous."  *Doering,* 857 F.2d at 194.

The following claims in UCLA's motion must be dismissed – Point H alleging "Misrepresentations Surrounding Kevin J. Kelly," Point I alleging "Failing to Check Public Resources and the Production," Point J regarding "Protesting a Reasonable Protective Order," and Point K alleging "Failure to Consult with a Patent Attorney."  None of these have anything to do with the signing of a paper in this litigation.

7

More than that, as to Point H, it is not clear what UCLA's point is.  UCLA took the deposition of Kevin J. Kelly.  As set forth in the Declaration of Linda S. Agnew sworn to on November 24, 2021, on January 28, 2021, there was no attempted service at Harras Bloom & Archer's offices located at 445 Broadhollow Road, Suite 127, Melville, New York 11747.  As already stated by counsel for PeriRx, a phone call was made asking if Mr. Kelly was present in the office in Melville, such process server was advised that he was not physically present, which he was not, and such process server never physically came to the office in Melville.  Moreover, Mr. Kelly's deposition transcript clearly demonstrates that he was not substantively negotiating the agreement and amendments to the agreements.  [Agnew Dec., **Ex. 10**, July 28, 2021 Kelly Tr. at pg. 29, lines 2-23; pg. 70, line 15 to pg. 73, line 4; pg. 75, line to pg. 81, line 6; pg. 82, line 22 to pg. 83, line 13).   UCLA knows full well that it was patent attorneys Mr. Konieczny, Mr. Atwell and Mr. Buche who represented PeriRx in its dealings with UCLA and RNA.  In fact, Dr. Christopher Byrd testified that Mr. Kelly did not play a significant, if any, role in negotiating the agreements at issue in this case.  [Agnew Dec., **Ex. 9**, June 25, 2021 Byrd Tr. at pg. 118, line 10 to pg.119, line 24).

Ultimately it was agreed by the parties that Mr. Kelly's deposition would be conducted toward the end of discovery if UCLA chose to proceed with it.  UCLA wished to take Mr. Kelly's deposition, and Mr. Kelly's deposition was taken.  Counsel for UCLA's conduct during the deposition, knowing full well Mr. Kelly's medical condition, was shameful at best.[3]  Even after counsel's relentless badgering of him, the fact that Mr. Kelly's deposition did not fit in with UCLA's false narrative cannot form the basis of a sanctions motion.

_____

[3] Mr. Kelly's deposition was videotaped.  Counsel for PeriRx invites that Court to view a portion of Mr. Kelly's deposition and see for itself counsel's abusive, bad faith conduct.

8

With respect to a protective order, PeriRx always maintained that a protective order is not warranted in this breach of contract action.  Moreover, despite repeated demands, UCLA's counsel failed to establish any grounds upon which a protective order was and is appropriate in this matter.  In fact, UCLA made a motion for a protective order which was denied by the Court on the basis that UCLA had utterly failed to meet its burdens under Third Circuit authority to show why it was entitled to a protective order.  [ECF Doc. No. 78].  PeriRx thereafter agreed to a protective order as an accommodation to the Defendants and to facilitate third-party/non-party discovery in this case, and notes that, despite insisting on such an order, UCLA never made a motion to file even one document under seal in this case after the protective order was entered, despite being invited to do so by the Court on several occasions.  What UCLA was seeking was carte blanche ability to label every single document produced in this case as confidential while providing nothing more than general assertions without any grounding in Third Circuit authority as to why a protective order was necessary.  Just because UCLA and its counsel failed to properly make a motion to the court for a protective order, and PeriRx later, in order to facility third-party and non-party discovery agreed to a protective order, once again does not even come close to the "substantially more" that is required for Rule 11 sanctions.  *See Gaiarado*, 835 F.2d at 483 ("Litigants misuse [Rule 11] when sanctions are sought against a party or counsel whose only sin was being on the unsuccessful side of a ruling or judgment.  Rule 11 sanctions … do not automatically or usually follow an adverse judgment or ruling.  Substantially more is required.")

**B.      UCLA's Continued Willful Ignorance Of The Main Thrust Of PeriRx's Claims Against UCLA**

UCLA states on page 3 of its motion that "[t]he three key issues remaining in this case relate to insulin resistance, the Point-of-Care ("POC") Patents, and alter ego."  This could not be further from the truth in this case.  PeriRx's claim against UCLA on a third-party beneficiary

9

theory was the second cause of action pleaded in the First Amended Complaint [ECF Doc. No. 71], and is the claim that UCLA has continually, throughout this litigation, attempted to sweep under the rug knowing that it is directly liable to PeriRx on this claim.  This was the lead argument of PeriRx in its motion for summary judgment.

"California law permits third party beneficiaries to enforce the terms of a contract made for their benefit."  *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal.App.4th 1004, 1021, 90 Cal.Rptr.3d 453 (2010).  "The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract."  *Id.* at 1022.  "If the terms of the contract necessarily require the promisor to confer a benefit on a third person, then the contract, and hence the parties thereto, contemplate a benefit to a third person."  *Id.*

Section 3.5 of the UCLA Agreement states in relevant part that "If this Agreement is terminated for any reason, then upon the request of each Sublicensee, The Regents agree to enter into a license agreement with such Sublicensee(s) (each, a "New License Agreement"), the terms of which licensee agreement **shall** be substantially similar to the terms of the Sublicense granted by Licensee to such Sublicensee…." [ECF Doc. No. 122 -- Agnew Dec., **Exhibit I;** Agnew Dec., **Exhibit K**, April 7, 2021, Robertson Tr., pg. 114, line 18 to pg. 116, line 8 and pg. 154, line 20 to pg. 156, line 24]. As such, it is clear that, in the event of a termination of the UCLA Agreement, that the UCLA Agreement "contract necessarily require[s] [UCLA] to confer a benefit on a third person [PeriRx], then the contract, and hence the parties thereto, contemplate a benefit to a third person." *Spinks*, 171 Cal.App.4th at 1021.  Ragan Robertson testified that UCLA, per the terms of the UCLA Agreement, was required to enter into a substantially similar

license agreement directly with PeriRx.  [ECF Doc. No. 122 -Agnew Dec., **Exhibit K**, April 7, 2021, Robertson Tr., pg. 114, line 18 to pg. 116, line 8 and pg. 154, line 20 to pg. 156, line 24].

It is not disputed that the UCLA Agreement was terminated.  It then took UCLA almost two months to even present PeriRx with a proposed license agreement between UCLA and PeriRx, despite several requests and follow ups by PeriRx.  On February 5, 2019, UCLA finally provided PeriRx with a direct draft license agreement (the "Draft Direct Agreement") between UCLA and PeriRx.  [ECF Doc. No. 122 - Agnew Dec., **Exhibit TT**].   UCLA deleted Section 17.1(c), which, in essence, warranted that UCLA knew of no written claims of third parties that would call into question the right of UCLA to grant to PeriRx the rights granted thereunder.  UCLA also deleted the portion of Section 17.3 that referenced Section 17.1(c) which would have allowed PeriRx to obtain incidental, special, consequential, exemplary and punitive damages from a breach of Section 17.1(c).  [ECF Doc. No. 122 - Agnew Dec., **Exhibits A, D** and **TT**].  UCLA deleted these provisions of Section 17 because it was well aware of rampant infringement by EZLife Bio, which had been reported to UCLA by PeriRx, Aruras, and of which UCLA was very well-aware after its CIRC reviews and investigations of Dr. Wong and his relationship with EZLife Bio.  [ECF Doc. No. 122 - Agnew Dec., **Exhibits Q, R, V, W, AA, CC, EE, II, NNN, OOO, PPP, UUU**].  These CIRC reviews uncovered, among other things, that Dr. Wong held an equity interest in EZLife Bio, that Dr. Wong had failed to disclose such equity interests in certain publications in which EZLife Bio was involved, that Dr. Wong had failed to disclosed such equity interest in applying for a grant with the National Institute of Health ("NIH") that involved EZLife Bio, using EFIRM readers from EZLife Bio that UCLA acknowledged infringed on intellectual property to which EZLife Bio held no license, and that such grant had been applied for by Dr. Wong without the proper CIRC review.  *See id.*

11

On February 25, 2019, PeriRx sent a letter to Dr. Robertson responding to the Direct Draft License.  Dr. Robertson acknowledged that this letter was a response to the Draft Direct License.   [ECF Doc. No. 122 - Agnew Dec., **Exhibits K** and **VV**]. On February 25, 2019, John Buche wrote to Emily Loughran, Dr. Robertson and Dr. Wong in response to the Draft Direct Agreement.  Among other things, Mr. Buche stated that the Draft Direct Agreement did not address many of the concerns that PeriRx had discussed with UCLA, including but not limited to certain concessions that would be made on milestone and royalty payments because of all the issues caused by RNA, RNA and Dr. Wong's competition with PeriRx in the diabetes/prediabetes/insulin resistance space and Point-of-Care space, UCLA's license to Aruras which overalapped with rights already licensed to PeriRx with respect to Point-of-Care technologies, infringement and competition by EZLife Bio, which UCLA was well aware of, stripping PeriRx of its exclusive rights, and stripping PeriRx of warranties it previously enjoyed. [ECF Doc. No. 122 - Agnew Dec., **Exhibit YY**].

On March 8, 2019, Dr. Raouf Guirguis of Aruras Holdings, LLC ("Aruras") wrote to Dr. Robertson stating he was arranging a meeting with Dr. Wong and Dr. Liao around that time to determine and reaffirm "Who Owns What" moving forward with the licenses.  He also stated "Needless to remind you that we have been bombarded by claims of other individuals/companies such as Per[i]RX and its principles that they own the same technology that you have licensed to Aruras."  He also stated "Furthermore, Dr. Wong/Liao's company EZLIFE.bio continues to infringe on the EFIRM Technology that ARURAS licensed from you.  In addition, I have paid Dr. Wong over $250,000 Towards our UCLA licenses that I still need to sort out with him to reconcile or recover this money."  [ECF Doc. No. 122 - Agnew Dec., **Exhibit AAA**].

On March 18, 2019, there was a meeting at UCLA between Dr. Robertson, Amir

Naiberg, Dr. Guirguis, Dr. Jack Martin, and Stephen Swanick to discuss issues with the licenses. [ECF Doc. No. 122 - Agnew Dec., **Exhibit BBB**].  PeriRx raised the same concerns that it has raised in its letters to UCLA.  However, instead of addressing PeriRx's concerns at that meeting, Amir Naiberg told PeriRx that it had no rights and that UCLA had no obligations to PeriRx.

On April 12, 2019, PeriRx wrote to Dr. Robertson and Amir Naiberg to memorialize the March 18, 2019 meeting and regarding moving forward with a license with UCLA.  [ECF Doc. No. 122 - Agnew Dec., **Exhibit GGG**].  On April 22, 2019, Dr. Robertson wrote to PeriRx wherein UCLA, for the first time, informed PeriRx that the UCLA Agreement had been formally terminated as of March 15, 2019.  The letter stated that UCLA would continue discussing PeriRx's interest in the Wong Portfolio.  It also stated "We view UCLA TDG's relationship with PeriRx over the past several years as a successful one and we hope to build upon that success." [ECF Doc. No. 122 - Agnew Dec., **Exhibit III**].

Despite the fact that PeriRx raised a myriad of issues with UCLA with respect to the Draft Direct Agreement, the record is void of so much as a scintilla of evidence that UCLA ever addressed even one of the concerns that PeriRx raised.  Instead, UCLA proceeded to entered into first a Letter of Intent, and then an Exclusive License Agreement, with Liquid Diagnostics, LLC ("Liquid Diagnostics").  In mid-2019, when UCLA should have been honoring its obligation to PeriRx, Charles Strom, who worked as an interim director of the UCLA Molecular Pathology Laboratory, wrote to Amir Naiberg and Dr. Robertson to "pitch" a meeting with the individuals who would become Liquid Diagnostics LLC to obtain a license to the EFIRM Patent.  He admits to working closely with Dr. Wong and Dr. Liao of EZLife Bio.  [ECF Doc. No. 122 - Agnew Dec., **Exhibit DDDD**].  All of the key players in Liquid Diagnostics, including Dr. Wong, Charles Strom, Michael Tu and Richard Bender, previously worked for EZLife Bio.  [ECF Doc.

13

No. 122 - Agnew Dec., **Exhibit AAAAAA and BBBBBB].** On or about July 15, 2019, Charles Strom Consulting, which later became Liquid Diagnostics, LLC, obtained a Letter of Intent for the EFIRM Patent. [ECF Doc. No. 122 - Agnew Dec., **Exhibit EEEE].** On February 18, 2020, UCLA entered into a license agreement with Liquid Diagnostics LLC in which UCLA licensed the EFIRM Patent to Liquid Diagnostics. [ECF Doc. No. 122 - Agnew Dec., **Exhibit QQQ**].

Despite the fact that these arguments occupy a significant portion of PeriRx's motion for summary judgment, mention of this claim is completely absent from UCLA's Rule 11 motion, which instead primarily focuses on matters which, at this stage in the litigation, are not the focal point of PeriRx's claims against UCLA. Moreover, UCLA's narrative has changed over the course of this litigation with respect to both insulin resistance and Point-of-Care related to both liquid biopsy for lung cancer as well as infectious diseases. UCLA maintained throughout much of this litigation that PeriRx had no rights to insulin resistance until PeriRx showed exchanges between Chris Byrd and Gwilym Attwell that showed that UCLA and RNA agreed that PeriRx did in fact have rights to insulin resistance markers (related to the Diabetes Patent). [ECF Doc. No. 122 - Agnew Dec., **Exhibit H**].

As far as Point-of-Care as it relates to infectious diseases, UCLA speaks out of both sides of its mouth, arguing both that PeriRx did not have rights to Point-of-Care for infectious diseases, which simply is not the case, while at the same time arguing that PeriRx didn't develop the Point-of-Care technology despite all of the time and effort expended by PeriRx to develop this technology for infectious disease applications. PeriRx was forced to stop these efforts due to UCLA and RNA's breaches. A Point-of-Care device is built for purpose rather than the purpose to the device. PeriRx spent much time and effort with MPR Associates, its engineers and its funders, but also hired infectious disease consultant, namely Chris Asplen and Dr. Jenny

14

Withoff, who traveled with PeriRx to Saudi Arabia, multiple meetings with MPR, meetings with Israeli virology experts – all part of the comprehensive development of a plan to build a Point-of-Care device and execute clinical trials.  Curiously, when PeriRx pointed out in its opposition to UCLA's motion for summary judgment why the language of the UCLA Agreement and PeriRx's agreements with RNA are broad with respect to Point-of-Care and in no way limit its use to infectious disease applications, UCLA had no response.

C. **UCLA's Attempt To Blame Its Lack of Diligence on PeriRx Should Not Be Countenanced By This Court and UCLA Once Again Fails To Prove Actual Sanctionable Conduct**

It is disingenuous at best that counsel for UCLA is now seeking to blame its own lack of diligence on PeriRx.  In fact, it was counsel for UCLA that represented to counsel for PeriRx early in this litigation that counsel had reviewed all relevant documents, which certainly would have included the First Amendment, which was expressly referenced in the Complaint.  [ECF Doc. No. 1].  Moreover, the UCLA Agreement required RNA to provide UCLA with copies of all license agreements.  [ECF Doc. No. 122 - Agnew Dec., **Exhibit A**, Section 3.4].  That UCLA apparently claims to have failed to obtain copies of such agreements from RNA and that RNA failed to provide such copies to UCLA, is not the fault of PeriRx.  In fact, Emily Loughran testified that UCLA never had a copy of the Amended and Restated License Agreement that was executed in 2012 and did not obtain such a copy until much later.  [Agnew Dec., **Ex. 11**, April 15, 2021, Loughran Tr. at pg. 89, line 13 to pg.90, line 13).  PeriRx and its counsel are unaware of any authority, and UCLA has cited none, that would require PeriRx to do UCLA's job for it.  While UCLA accuses PeriRx of failing to conduct its due diligence, it is obvious that, with respect to the First Amendment and the release contained therein, the validity of which was challenged by PeriRx, UCLA and its counsel utterly failed to conduct its diligence.

15

As set forth above, Rule 11 sanctions are proper only in situations which involve signing a paper. *Teamsters Local Union No. 430,* 841 F.2d at 68 (*citing Gaiardo*, 835 F.2d at 484). UCLA's claim that PeriRx somehow should be sanctioned for allegedly failing to disclose the release is simply not covered by Rule 11 and such claims must be dismissed. Nor do such allegations even come close to the "substantially more" that is required for Rule 11 sanctions. *See Gaiarado*, 835 F.2d at 483 ("Rule 11 sanctions … do not automatically or usually follow an adverse judgment or ruling. Substantially more is required.")

### D.     There Were No "Barred Claims" And PeriRx Advanced Multiple Objectively Reasonable Arguments As To Tolling of Statutes of Limitations and In An Attempt To Invalidated The Release

Again, the purpose of Rule 11 "is not wholesale fee shifting but correction of litigation abuse," and sanctions "do not automatically or usually follow an adverse judgment or ruling. Substantially more is required." *Gaiardo*, 835 F.2d at 483. The advisory committee note to the 1983 Amendment to Rule 11 explains that "[t]he rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." That an argument ultimately failed on the merits does not transform its filing into sanctionable conduct. *See Gaiarado*, 835 F.2d at 483. That is, however, exactly what UCLA is trying to argue in subsections (C) and (D) of its motion, i.e. that PeriRx should be sanctioned because certain causes of action pled in this action were dismissed, notwithstanding the fact that PeriRx made, in its oppositions to UCLA's motions to dismiss, numerous arguments as to why this Court should invalidate the release contained in the First Amendment as well as several arguments regarding tolling of statutes of limitations. [ECF Doc. No. 40].

"Rule 11 targets abuse—the Rule must not be used as an automatic penalty against an attorney or a party advocating the losing side of a dispute." *Mary Ann Pensiero, Inc.*, 847 F.2d

16

at 94 (citation and internal quotation marks omitted).  Rule 11 "should not be applied to

adventuresome, though responsible, lawyering which advocates creative legal theories."  *Id.*

Further, "[t]he rule is not an appropriate vehicle for resolving legal or factual disputes."

*StrikeForce Techs., Inc.*, 2013 WL 5574643, at *4 (D.N.J. Oct. 9, 2013) (citations omitted).

However, that is exactly what UCLA is attempting to do – seek sanctions because it disagrees

with PeriRx's objectively reasonable arguments that it was entitled to tolling of the applicable

statutes of limitations of claims set forth in the complaint due to various bad acts of UCLA, RNA

and Dr. Wong.  [ECF Doc. No. 40].

For example, PeriRx argued that the continuous violation doctrine should apply due to,

among other things, UCLA, RNA and Dr. Wong's continuous pattern of conduct.  [ECF Doc.

No. 40].   PeriRx also argued that equitable tolling, equitable estoppel and the discovery rule

should apply to, among other things, PeriRx's fraud and misrepresentations claims. This Court,

in its December 3, 2020, decision, disagreed with PeriRx that it was entitled to any tolling of

statutes of limitations.  That this Court disagreed with PeriRx's arguments is not a basis for Rule

11 sanctions and, once again, does not even come close to the "substantially more" that is

required for Rule 11 sanctions and UCLA's counsel knows it.  *See Gaiarado*, 835 F.2d at

483 ("Rule 11 sanctions … do not automatically or usually follow an adverse judgment or ruling.

Substantially more is required.")  As such, UCLA's motion should be denied.

### E.    UCLA's January 11, 2021 Letter, Sent Prior To Any Discovery Being Conducted In This Case, Is Probative Of Nothing

As to subsections (E), (F) and (G) of UCLA's motion, once again, Rule 11 "is not an

appropriate vehicle for resolving legal or factual disputes."  *StrikeForce Techs., Inc.*, 2013 WL

5574643, at *4 (D.N.J. Oct. 9, 2013) (citations omitted).  To this date in this litigation, PeriRx

still maintains its claim that RNA is merely the alter ego of UCLA, which theory only gained

17

support during discovery in this case. In the mind of UCLA's counsel, apparently a few hand-picked and cherry-picked emails constitute "evidence" upon which PeriRx should abandon their claims. What makes UCLA's motion even more incredulous is that, after the filing of the First Amended Complaint, UCLA, contrary to its claims in this motion, did not make another motion to dismiss but actually made a short 'motion to strike' certain allegations in PeriRx's First Amended Complaint [ECF Doc. No. 75] and then answered the First Amended Complaint at the same time. [ECF Doc. No. 76]. In fact, it was an email attached to this January 11, 2021, letter, consisting of exchanges between Ragan Robertson and the University of Puerto Rico, that **confirmed** that Dr. Joshipura did in fact have inventor's right to the diabetes markers and insulin resistance markers but had been willfully cut out by UCLA. The fact that Dr. Joshipura had these inventor's right was later confirmed to an even greater extent by documents produced by UCLA in discovery in this case.

As to PeriRx's interrogatory responses, there was much back and forth between counsel, UCLA made a motion, this Court made a ruling, and PeriRx amended its responses to the interrogatories and provided them to UCLA, after which UCLA did not raise further issues. As such, this certainly is not sanctionable conduct.

And once again, UCLA's January 11, 2021 [Agnew Dec., **Ex. 7**], letter should be noted for what it did not say. It never addressed PeriRx's third-party beneficiary claim, the claim that, pursuant to Section 3.5 of the UCLA Agreement, PeriRx has directly against UCLA. The letter also continued to propound UCLA's gross misunderstanding of PeriRx's overlap claim, which claim would later find validation from Dr. Wong himself in multiple emails produced not by UCLA, despite the fact that such emails resided on UCLA's servers, but by RNA's counsel, and which were produced over **one month after** the discovery cutoff of April 9, 2021. [Agnew Dec.,

Ex. 8].  Dr. Wong made clear in this series of emails that, as PeriRx has argued, the Probe

Immobilization patent is part of the EFIRM "family" and necessary for one to have "freedom to

operate" with respect to the EFIRM patent.  [ECF Doc. No. 138, Martin Dec., ¶ 94, **Exs. 8-13**].

As just one example, in a May 2016 email to a Dr. Fang, Dr. Wong identifies 3 inventions for

EFIRM – 2 of these three are the '304 Probe Immobilization Patent and the '635 EFIRM Patent

case numbers (and the third, 2007-527, the High Specificity Patent, was also licensed to PeriRx).

[ECF Doc. No. 138, Martin Dec., ¶ 94, **Ex. 10**].  To this day, UCLA has yet to come up with an

explanation for this series of emails written by Dr. Wong in May 2016, long before this lawsuit

was ever filed, with regards to Dr. Wong's own admission that the Probe Immobilization Patent

is a necessary method for EFIRM.

What UCLA also ignores in its continued attempts to push its false, misleading narrative

with respect to PeriRx's "overlap" claim is that PeriRx has never once stated that the actual

claims of the EFIRM Patent and Probe Immobilization Patent overlap.  UCLA's expert, Dr.

Richard Crooks, focused on this issue, and this issue alone, and admitted that he was never asked

to look into, let alone opine, how EFIRM is actually being used by UCLA and Dr. Wong (and

others) in commercial applications, despite the fact that use in commercial application is exactly

the real issue in this case, as PeriRx had the right to develop the patents and technology that it

licensed on an exclusive basis for commercial applications.

This fact was confirmed in April 2021, when Liquid Diagnostics reached out to Ragan

Robertson of UCLA after learning of the Probe Immobilization Patent after being served by

PeriRx with a subpoena in this lawsuit.  At that time, Liquid Diagnostics asked about licensing

the Probe Immobilization Patent, and Ragan Robertson testified that Liquid Diagnostics, who at

that time had a license to the EFIRM patent, had concerns about freedom to operate and that is

why Liquid Diagnostics had sought to license the Probe Immobilization Patent.  (CITES).  It appears that UCLA hoped that by threatening PeriRx with Rule 11 sanctions in January 2021, these facts would never come to light.  Once again, the allegations in UCLA's motion do not even come close to the "substantially more" that is required for Rule 11 sanctions.  *See Gaiarado*, 835 F.2d at 483.

### F.      No Intentional Misrepresentations Were Made By PeriRx

As to subsections (A) and (B) of UCLA's motion, yet again, Rule 11 "is not an appropriate vehicle for resolving legal or factual disputes."  *StrikeForce Techs., Inc.*, 2013 WL 5574643, at *4 (D.N.J. Oct. 9, 2013) (citations omitted).  As to UCLA's arguments with respect to Temple, these arguments were not advanced in PeriRx's motion for summary judgment [ECF Doc. No. 122] nor did this Court rely on these allegations with respect to UCLA's motion to dismiss the original complaint in this case.  [ECF Doc. No. 62].  As to LabCorp, UCLA fails to mention that Dr. Kellie Watson of LabCorp testified that LabCorp was very interested in pursuing work on salivary biomarkers for insulin resistance.  [ECF Doc. No. 138 – Martin Dec., ¶ 127 and **Ex. 26**).  UCLA also fails to mention that Dr. Wong approached LabCorp on his own, without PeriRx, but apparently did not pursue any further once Dr. Watson starting asked questions regarding IP rights to the technologies.  Finally, when asked if Dr. Watson would have assumed that Dr. Wong and PeriRx were working together, she answered in the affirmative.  [Agnew Dec., **Ex. 12**, pg. 101, line 4 to pg. 105, line 9].  Once again, UCLA chooses to cherry-pick deposition testimony to support its narrative – given that Dr. Watson testified regarding LabCorp's great interest, it begs the question as to why there was not support to move forward.

Further, after much back and forth, emails from Christopher Byrd confirm that PeriRx did in fact have rights in the insulin resistance space.  [ECF Doc. No. 122 - Agnew Dec., **Exhibit**

H]. UCLA and Dr. Wong have admitted that Dr. Wong did work for PeriRx with respect to diabetes and insulin resistance as early as 2012/2013 and that while PeriRx wished to enter into a Sponsored Research Agreement to do further work, Wong refused to do so and instead pursued work in this area without PeriRx.  Again, UCLA changes its story to suit its narrative.  After claiming PeriRx had no rights to insulin resistance, UCLA, upon being presented with the Byrd-Attwell emails, then attempted to argue that PeriRx has no claims because it was acknowledged that PeriRx did have rights to insulin resistance, all of this after UCLA failed to file the proper patent applications and, as acknowledged by Ragan Robertson in the email string with the University of Puerto Rico provided with UCLA's January 11, 2021 letter, lost all rights except for in the United States.  [Agnew Dec., **Exhibit 7**, Ex. D to letter].

As to alter ego, exactly what PeriRx alleged is exactly what Dr. Wong testified to with respect to RNA being nothing more than a shell corporation.  The facts in this case are clear – since its inception, RNA utterly failed to follow any corporate formalities – it wasn't capitalized, there was no stock issued to anyone or any entity, including UCLA, Dr. Wong never held any position with RNA, RNA had no employees, no one other than Dr. Wong or Sharon Wong was affiliated with RNA, since around January 2014 UCLA had no corporate officers whatsoever, RNA never held any board meetings and has no board minutes, RNA never held annual meetings as required by RNA's alleged By-Laws, RNA never held any shareholder meetings, RNA did not have a Board of Directors, RNA did not maintain a corporate office, upon their divorce, Sharon Wong received nothing for her alleged shares of RNA and RNA passed no resolutions authorizing it to enter into its agreements with either UCLA or PeriRx.  [ECF Doc. No. 122 - PeriRx's Rule 56 Statement at ¶¶ 65-91].  Pursuant to Section 4.2 of the UCLA Agreement, RNA was to issue to UCLA shares of common stock of RNA equal to six (6) percent of the

outstanding and issued common stock of RNA. [ECF Doc. No. 122 - Agnew Dec., **Exhibit A**].
Notwithstanding, despite learning in 2015 that this had not been done, UCLA never sought to
receive, and never received, any shares of stock in RNA. [ECF Doc. No. 122 - Agnew Dec.,
**Exhibits A**, **SSSS** and **VVVV**]. However, Liquid Diagnostics testified that, as part of its license
agreement with UCLA, that UCLA did, in fact, take its interest. [Agnew Dec., **Ex. 13**, pg. 61].

On June 27, 2017, Dr. Robertson sent an email to Dr. Wong, without copying Dr. Byrd,
asking him about the RNAmeTRIX license, the sublicense with PeriRx, and what was going on
with Aruras. [ECF Doc. No. 122 - Agnew Dec., **Exhibit XXX].** On January 10, 2018, Dr.
Robertson again wrote directly to Dr. Wong, no copy to Dr. Byrd, regarding RNA license issues,
and also stated "In regards to PeriRx, I had a call with them this week, and communicate with
them frequently." [ECF Doc. No. 122 - Agnew Dec., **Exhibit YYY].** By October 2018, Wong
and UCLA were furthering their plan to license the Liquid Biopsy Technologies, including the
Probe Immobilization Patent, to a company of David Wong's choosing and in which he had an
ownership interest. On October 4, 2018, David Wong sent an email to Ragan Robertson to meet
with him concerning an arrangement to terminate the UCLA Agreement so that the technology
could be licensed to third parties. [ECF Doc. No. 122 - Agnew Dec., **Exhibit T, ZZZ** and
**XXXXX**]. This was all done without Chris Byrd, RNA's counsel, as was nearly the entirety of
the process of terminating the UCLA Agreement. Once again, UCLA ignores all of these facts
and focuses merely on negotiations of the agreements.

As to licensing of the POC Patents, yet again, UCLA tries to hide the ball. It is not in
dispute that Dr. Raouf Guirguis of Aruras threatened to sue PeriRx for patent infringement. As
set forth in Point E above, these arguments also continue to propound UCLA's gross
misunderstanding of PeriRx's overlap claim, which claim would later find validation from Dr.

Wong himself in multiple emails produced not by UCLA, despite the fact that such emails resided on UCLA's servers, but by RNA's counsel, and which were produced over **one month after** the discovery cutoff of April 9, 2021.  [Agnew Dec., **Ex. 8**].  Dr. Wong made clear in this series of emails that, as PeriRx has argued, the Probe Immobilization patent is part of the EFIRM "family" and necessary for one to have "freedom to operate" with respect to the EFIRM patent. It is obvious that Dr. Guirguis recognized this fact and threatened to sue PeriRx for patent infringement until he realized that PeriRx had a license to Probe Immobilization, at which point he accused UCLA of fraud.  [ECF Doc. No. 122 - Agnew Dec., **Exhibit LLLLLL**, April 14, 2021 Martin Tr. (Individual), at pg. 167, line 20, to pg. 172, line 25].

As to lung cancer, it is not in dispute that one of the alleged inventors of the lung cancer patent reached out to Dr. Jack Martin and told him that, despite being listed as an inventor, that he had no knowledge of the lung cancer patent or the work underlying the patent.  Again, this fact is ignored by UCLA and calls into question the veracity of the alleged assignments.  There is no dispute that the lung cancer designation continued to be developed by PeriRx as per the First Amendment well into 2018.

As to diabetes and insulin resistance, exchanges between Ragan Robertson and the University of Puerto Rico that **confirmed** that Dr. Joshipura did in fact have inventor's rights to the diabetes markers and insulin resistance markers but had been willfully cut out by UCLA and was not listed as an inventor on the insulin resistance provisional even though she should have been.  ([Agnew Dec., **Exhibit 7**, Ex. D to letter].  After misrepresenting that the IR Provisional could not be pursued due to a Supreme Court ruling, UCLA then conveniently fails to tell the University of Puerto Rico about the Diabetes Patent, on which Dr. Joshipura should also have been an inventor but was cut out by UCLA.  The fact that Dr. Joshipura had these inventor's

23

right was later confirmed to an even greater extent by documents produced by UCLA in discovery in this case.  That UCLA would actually try to continue to claim in this motion that Dr. Joshipura had no rights is disingenuous at best and indicative of UCLA's pattern of conduct to deny parties of their rights while retaining benefits for themselves.

And yet again, the allegations in UCLA's motion do not even come close to the "substantially more" that is required for Rule 11 sanctions and UCLA's motion should be denied in its entirety.  *See Gaiarado*, 835 F.2d at 483.

### G. PeriRx Should be awarded its Counsel Fees in Having to Defend This Baseless Motion.

As set forth above, UCLA's motion is devoid of any merit and is clearly not being brought in good faith but rather as a improper litigation tactic.  It is not designed to prevent abuse but is designed to abuse PeriRx in UCLA's desperate attempt to deprive PeriRx of its day in Court.  One need look no further than the emails which accompanying the safe harbor services of the motion.  [**Exhibits 2** and **5** to the Agnew Declaration dated November 24, 2021 ("Agnew Dec."].  The emails are clear.  The August 3, 2021, email from counsel Erin Dunston states "If within the time frame PeriRx agrees to dismiss its claims against the Regents (UCLA) with prejudice and reimburses the Regents for attorneys' fees and costs associated with this litigation, The Regents will not file the final versions of this Motion and Memorandum." [Agnew Dec., **Ex. 2**].  As set forth above, UCLA's motion utterly ignores PeriRx's Third Party Beneficiary claim and the actual and undisputed facts associated with PeriRx's alter-ego claim. Yet UCLA and its counsel have the audacity to demand a full discontinuance of all claims against UCLA to avoid the filing of this frivolous motion to this Court.  The timing of the motion is also no coincidence. It was timed so that PeriRx would have to respond to it while simultaneously answering UCLA

and RNA's respective motions for summary judgment.  [Agnew Dec., **Ex. 3**].   After communication with the Court, UCLA did not file its motion at that time.  [Agnew Dec., **Ex. 4**].

Inexplicably, on or about October 15, 2021, days before a settlement conference ordered by the Court, counsel for UCLA doubled down and once again served its motion for sanctions. [Agnew Dec., **Ex. 5**].  In its email, counsel Erin Dunston once again states "If within that time frame PeriRx agrees to dismiss its claims against the Regents with prejudice and reimburses the Regents for its attorneys' fees and costs associated with this litigation, The Regents will not file the final versions of this Motion and Memorandum."  Once again UCLA ignores the third-party beneficiary claim and the actual underlying facts associated with its alter ego claim.  By letter dated October 22, 2021, PeriRx responded to Ms. Dunston's email.  Ms. Dunston did not reply to the correspondence but rather filed the motion with the Court on November 10, 2021.

It is respectfully submitted that UCLA and its counsel should be ordered to reimburse PeriRx for its counsel fees and expenses in having to respond to this utterly baseless motion which is nothing more than an aggressive litigation tactic designed to intimidate and harass PeriRx and its counsel.  UCLA and its counsel are playing "hardball" at the expense of PeriRx. In fact, UCLA's actions here is the very conduct for which the Third Circuit authorizes the imposition of sanctions on the movant. *Gaiardo*, 835 F.2d at 484.

### CONCLUSION

For the foregoing reasons, PeriRx respectfully request that the Court enter an order (1) denying UCLA's motion for sanctions in its entirety; (2) granting PeriRx the costs and fees and attorneys' fees incurred in connection with this motion; and (3) granting such other and further relief as this Court deems just, proper and equitable.

Dated: November 24, 2021

Respectfully Submitted

*/s/ Linda S. Agnew*
Kevin J. Kelly (PA ID 33813)
Linda S. Agnew (*pro hac vice*)
Tara D. McDevitt (*pro hac vice*)
HARRAS BLOOM & ARCHER LLP
445 Broadhollow Road, Suite 127
Melville, NY 11747
Tel: (631) 393-6220
Fax: (631) 393-6229
kkelly@hba-law.com
lagnew@hba-law.com
tmcdevitt@hba-law.com

*Counsel for Plaintiff PeriRx, Inc.*