# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PERIRX, INC. *Plaintiff*, | : : : : | |
| v. | : : | CIVIL ACTION<br><br>No: 2:20-cv-02212-JDW |
| THE REGENTS UNIVERSITY OF CALIFORNIA, *ET AL.* *Defendants.* | : : : : : : | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MOTION FOR
SANCTIONS AGAINST PLAINTIFF PERIRX, INC. AND ITS COUNSEL**

# **TABLE OF CONTENTS**

I.  PERIRX'S OPPOSITION TRIES TO BURY ITS MISREPRESENTATIONS THAT REQUIRED THE REGENTS TO DEFEND AGAINST FALSE CLAIMS .......................... 1

II. PERIRX DOES NOT DENY ITS LACK OF PRE-FILING INVESTIGATION .................. 5

III. PERIRX DOES NOT CONTEST ITS FAILURE TO INFORM THE COURT OF THE RELEASE AND PURSUING BARRED CLAIMS ............................................................. 5

IV. PERIRX'S RESPONSE RE SECTIONS E, F, AND G OF THE BRIEF ENTIRELY MISSES THE POINT AND BRINGS IN EXTRANEOUS ISSUES .................................... 6

V.  PERIRX'S "SIGNED PAPER" ARGUMENT RINGS HOLLOW WHEN SIGNED PAPERS ARE THE BASIS OF THE CLAIM – AND § 1927 REQUIRES NO SIGNED PAPER ........................................................................................................................................ 8

VI. PERIRX CONCEDES ARGUMENTS ON § 1927 AND LOCAL RULE 83.6.1(B) ............ 9

VII. PERIRX'S COUNSEL'S PATTERN OF CONDUCT HAS BEEN CONSISTENT AND WARRANTS SANCTIONS ............................................................................................... 10

VIII. CONCLUSION ..................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Brown v. Certain Underwriters at Lloyds,* 777 Fed. App'x 34 (3d Cir. 2019)................................9

*Huck v. Dawson,* 106 F.3d 45 (3d Cir. 1997) ................................................................................10

*Levy-Tatum v. Navient Sols., Inc.,* 183 F. Supp.3d 701 (E.D. Pa. 2016)........................................10


**Statutes**

28 U.S.C. § 1927................................................................................................................ 1, 6, 8-10


**Other Authorities**

FED. R. CIV. P. 11(b)(1) ............................................................................................................ *passim*

Local Civil Rule 83.6.1 ................................................................................................... 1, 6, 9-10

PeriRx's opposition brief ("Opposition" or "Opp.") fails to challenge with proof or caselaw the pivotal issues that caused The Regents to bring its Motion for Sanctions (*ECF 158*) and supporting brief (*ECF 158-1*, "Brief"). PeriRx misrepresented significant factual issues in bringing this action, and then lengthened and made more costly the proceedings by continuing to press allegations that it knew were false and unsupportable. PeriRx's counsel propagated those misrepresentations in arguments made to this Court, both in paper and orally. As detailed in the Brief, PeriRx's failure to adhere to the truth and forcing additional litigation at every step of the way is not ameliorated by finally holding back on precious few of its spurious arguments at the summary judgment stage –the damage was already done. In signed writings filed with the Court and in litigation correspondence underlying disputes brought to this Court, PeriRx and its counsel have taken unsupported and unsupportable positions as they sought to justify absurd and factually untrue arguments. For the reasons set forth in the Brief, and for the reasons set forth below, PeriRx and its counsel should be sanctioned for violations of Rule 11 and for willful bad faith conduct in violation of § 1927 and Local Rule 83.6.1(b) in this litigation.

I.  **PERIRX'S OPPOSITION TRIES TO BURY ITS MISREPRESENTATIONS THAT REQUIRED THE REGENTS TO DEFEND AGAINST FALSE CLAIMS**

In the Brief, The Regents demonstrated with proof that PeriRx and counsel not only made statements that they knew were false when made, but also propagated those facts as the bases for continuing this action. In Section A of the Brief (*ECF 158-1* at 3-10), The Regents set forth damning evidence that statements regarding Temple University, LabCorp, alter ego, and the licensing of the POC patents – statements found in the Complaint, the FAC, and PeriRx's opposition to The Regents' motion to dismiss (*ECF 40* at 10, 18 [citing ECF 1, ¶¶ 125-141, including ¶ 139]), (all of which are signed documents filed with the Court by PeriRx and counsel), and PeriRx's verified interrogatory responses – were false when made. *Id.* PeriRx's

Opposition, seeking to hide its malfeasance, buries its arguments at the back of its brief, only to then dismiss the arguments with a hand wave and a blanket denial. *ECF 159* at 20-24.

PeriRx's first supposed defense is that, despite pursuing the Temple arguments throughout the case, once PeriRx had The Regents' draft sanctions motion in hand (first served on August 3, 2021, *i.e.,* before opening summary judgement briefs), the Temple arguments "were not advanced in PeriRx's motion for summary judgment." *Id.* at 20. But those Temple-related misrepresentations are what enabled PeriRx to get past The Regents' and RNA's motions to dismiss (see *ECF 62,* ¶ 43), and therefore required The Regents to pay fees and expenses over at least six months to demonstrate, including through third party discovery, that there was zero truth to the allegations that PeriRx knew all along were false.

Here is one of the paragraphs in the Complaint regarding PeriRx's alleged "negotiations" with Temple and LabCorp regarding insulin resistance:

> 139. During this time, PeriRx was negotiating with several entities, including LabCorp and Temple University, about developing tests for the detection of insulin resistance. In fact, PeriRx had nurtured a seven (7) year relationship with Dr. Marcia Eisenberg, Chief Science Officer, and Kellie Watson, Chief Global Business Development Officer, of LabCorp. However, when these entities learned that Wong and UCLA had gone behind PeriRx's back and attempted to publish and obtain patents on their own, both walked away from the table.

*ECF 1,* ¶ 139. And here is the almost identical paragraph in the FAC.

> 144. During this time, PeriRx was negotiating with several entities, including LabCorp and Temple University, about developing tests for the detection of insulin resistance. In fact, PeriRx had nurtured a seven (7) year relationship with Dr. Marcia Eisenberg, Chief Science Officer, and Kellie Watson, Chief Global Business Development Officer, of LabCorp. However, when these entities learned that Wong and UCLA had gone behind PeriRx's back, done their own studies and published research while cutting out PeriRx, both walked away from the table.

*ECF 71,* ¶ 144.  PeriRx stood by these statements despite their falsity.  Indeed, in opposition to The Regents' motion to dismiss, PeriRx cited the above paragraph in the Complaint (*ECF 1,* ¶ 139).  *See, e.g., ECF 40,* 10.

The fact that the cited examples were misrepresentations is not undercut by PeriRx's hand-waving in the Opposition.  Regarding Temple, PeriRx merely argues that during summary judgment, it did not rely on the Temple allegations.  But, as noted above, that misses the point.  PeriRx knew that its representations—both in allegations of fictitious "negotiations" with Temple on insulin resistance held "during the time" of Wong's (2015-2016) insulin resistance work (*ECF 72,* ¶ 142), and also in PeriRx's signed *sworn* interrogatory responses that these "negotiations" were held "beginning in 2018" (*ECF 119-61,* 18) when in reality first contact with Temple was when Swanick was looking for a job in November 2019, long after the termination of all agreements—were false.  PeriRx nevertheless pressed on, forcing The Regents to move to compel (*ECF 91*) and then to take the deposition of Temple to prove that which was known to PeriRx's CEO.

Perhaps more significantly, PeriRx argues that the Court did not rely on the allegations concerning Temple as part of its Order on The Regents' initial motion to dismiss, but that is also wrong.  The Court specifically cited those paragraphs and the "walked away from the table" allegations as part of its determination to allow the contract claims to proceed.  *ECF 62,* ¶ 43.  PeriRx only gainsays and never bothers to take issue with any of the proofs offered by The Regents regarding Mr. Swanick's misrepresentations.  *ECF 158-1* at 4-5.

Similarly, the Opposition completely ignores the misrepresentations regarding LabCorp.  In the Brief, The Regents explained the lack of veracity behind the LabCorp allegations above as well as the interrogatory responses used to propagate those false facts.  *ECF 158-1* at 5-7.  As

3

detailed in III.A.2 of the Brief, PeriRx CEO Swanick confessed during deposition that *he* had sent documentation to LabCorp, including the insulin resistance paper, despite verifying interrogatory responses to the contrary. *Id*. at 6. And PeriRx has no facts to support its assertion that LabCorp "walked away from the table" due to any action by The Regents or Dr. Wong, which PeriRx nevertheless irresponsibly advanced throughout the litigation. *Id.* at 6-7. LabCorp's representative testified that PeriRx's allegations were incorrect. *Id*. PeriRx refuses to address the proof of these specific misrepresentations, and instead merely protests that LabCorp was once "very interested in pursuing work" on insulin resistance, *ECF 159, 20*, while failing to mention that that "interest" died on the vine through no fault of The Regents or Dr. Wong.

With respect to alter ego, CEO Swanick again is the apparent source of the misrepresentations perpetuated by counsel. For example, the Complaint and FAC both assert that PeriRx was specifically and repeatedly told that all agreements signed by RNA with PeriRx had to be reviewed, revised, and approved by counsel for The Regents. But there was no truth to that allegation, nor any of the other numerous falsities advanced by PeriRx in support of alter ego allegations as detailed in the Brief. *ECF 158-1* at 7-9. PeriRx ignores these misrepresentations and seems to offer part of its summary judgment brief as a response. The problem is that the falsity remains, unchecked by counsel.

PeriRx similarly offers no counter to Section III.A.4 of the Brief and to The Regents' proof that the allegations regarding the POC Patents being re-licensed to third parties were false. Instead, PeriRx simply states that a third party (Aruras) asserted something which PeriRx knew was false at the time, namely that Aruras had the ability to sue PeriRx on the POC patents. *ECF 159*, 22. As detailed in the Brief, The Regents explained the falsity of the allegation to PeriRx before the filing of the FAC, but PeriRx kept right on pleading. Then, PeriRx rests its

4

Opposition on arguments about the scope of its POC assertions, but PeriRx makes no attempt to address the misrepresentations or counter The Regents' argument, because PeriRx cannot.

The fact is that PeriRx and its counsel have perpetuated these misrepresentations throughout the litigation, causing The Regents, RNA, and the Court to have to address them. Repeatedly. That is the epitome of sanctionable conduct.

## II.  PERIRX DOES NOT DENY ITS LACK OF PRE-FILING INVESTIGATION

It is not clear what arguments are meant to counter Section B of the Brief (*ECF 158-1* at 10-12) regarding PeriRx's lack of pre-suit diligence. Buried in the back of the Opposition, PeriRx suggests that it will offer arguments regarding the section, but those are unclear and sparse at best. The Regents' Brief contained several examples of PeriRx's allegations that are untrue, and knowably so with a modicum of diligence and inspection of public records. These include that PeriRx's counsel did not (1) inspect the public records of assignment, (2) investigate basic patent law, or (3) offer any explanation at any time as to why and when Dr. Joshipura should be or could be named as an inventor on any patent application. While those PeriRx claims have been dismissed by the Court, they required The Regents to counter through expensive motion practice the "facts" that PeriRx had no factual or legal basis for alleging.

## III. PERIRX DOES NOT CONTEST ITS FAILURE TO INFORM THE COURT OF THE RELEASE AND PURSUING BARRED CLAIMS

Apparently, PeriRx believes that if it makes arguments, no matter how baseless, it should be able to do so without investigating the facts underlying those allegations. In responding to Sections C and D of the Brief, *ECF 158-1* at 12-14, PeriRx suggests that knowing that claims are released is not something it has to inform the Court. In this case, PeriRx asserts that it knew of the Release, but that it was up to The Regents to file the motions it did to counter its meritless claims. *ECF 159*, 15-16. Using logic that only it understands, PeriRx now argues that its failure

to disclose the Release in the case-initiating Complaint can be blamed on The Regents' diligence in preparing its later motions to dismiss. *Id*. But at the time it made its claims in the Complaint and the FAC, PeriRx knew that the Release existed (in an agreement to which The Regents was not party) and that the Release would affect numerous claims – just as the Court later determined. Had The Regents not received the eleventh-hour assistance from RNA's counsel, the Court and The Regents would have been duped into litigating causes of action that PeriRx knew all the while had been released. Preventing that type of assertion of claims without a basis is exactly why Rule 11 provides sanctions.

That is even more so when the Court has ruled and the PeriRx amended pleading ignores the Court's ruling, requiring both The Regents and RNA to file new papers (a motion to strike and a motion to dismiss) to undo another PeriRx wrong. Counsel knew that the Order (*ECF 62*) was clear, but they nevertheless filed the FAC with the goal of keeping barred and released claims alive. That too is a violation of Rule 11, Section 1927, and Local Rule 83.6.1(b).

## IV. PERIRX'S RESPONSE RE SECTIONS E, F, AND G OF THE BRIEF ENTIRELY MISSES THE POINT AND BRINGS IN EXTRANEOUS ISSUES

Sections E, F, and G of The Regents' Brief highlight the willful bad faith by which PeriRx and its counsel pursued false claims even when the falsity of the claims was made known to PeriRx's counsel. After the briefing on the motions to dismiss, it was clear that PeriRx was laboring under knowingly false assumptions regarding key allegations, including that The Regents unilaterally terminated the UCLA Agreement, set up and dissolved RNA (which still exists), re-licensed the same patents to Aruras, or cut out the University of Puerto Rico ("UPR") and Joshipura from the Insulin Resistance Provisional. As noted in the Brief (*ECF 158-1* at 14-19), to avoid further wasting the Court's and the parties' resources, after the Court's Order on The Regents' first motion to dismiss (*ECF 62*), The Regents on January 11, 2021, provided a

detailed letter, specifying the false facts and unsupportable theories that should not be part of any amended complaint. *ECF 119-36*. The letter included the email by which Wong and RNA terminated the UCLA Agreement, the preexisting 2008 Option Agreement between The Regents and RNA, and detailed correspondence between The Regents and UPR on the Insulin Resistance Provisional. Rather than review the letter and re-fashion its pleading in the wake of additional evidence of the state of the facts, PeriRx and its counsel plunged ahead.

By its FAC, PeriRx decided to replead matters clearly indicated by The Regents in the January 11 letter to be improper, and additional items that had been ruled out by the Court. *ECF 71*. What PeriRx now argues is that despite having no basis for its allegations and receiving specific evidence showing that the allegations were false, PeriRx chose to reject the "hand-picked and cherry-picked emails" and make The Regents expend huge sums to defend the fabricated claims. *ECF 159, 18*. Requiring more than six more months of additional vexatious litigation, PeriRx forced The Regents to file a second Motion to Dismiss. *ECF 75* (and supporting papers). (Oddly, PeriRx continues to rewrite facts by now claiming that the second Motion to Dismiss had a different title, *i.e.*, a motion to strike. *ECF 159 at* 18. That is simply not true. *See ECF 75*.) The Court had to re-Order the dismissal of these claims. *ECF 87*.

And even while proceeding with the discovery in the action, PeriRx refused, until compelled twice – once by motion and once orally – to respond to interrogatories going to not only the heart of the contract claims, the alleged but unsupported alter ego allegations, the alleged and unsupported overlap of the POC patent claims with the EFIRM patent claims, and the supposed "walk[]away from the table" claims associated with LabCorp and Temple. Even after various rounds of compulsion, PeriRx never abandoned its false claims.

Unable to defend against the attacks, PeriRx does what it has done more than once –

7

throw in extraneous commentary and assertions.  Here, PeriRx starts by again raising the *dismissed* issue of the Joshipura inventorship and assignments – without factual basis and without any understanding of (or citation to) what is required to satisfy the legal determination of patent law inventorship.  And then PeriRx proceeds to address third party beneficiary issues – claims that are not part of The Regents' motion.  But even that is truncated and PeriRx starts to argue that its expert's assertion that the claims of the POC and EFIRM patents overlap is not what their case is about.  And as noted above, this type of slip-sliding away argument is what PeriRx specializes in – without factual support seeking a spin that changes the focus of the case to get yet another shot. Counsel and PeriRx's behaviors are bad faith – knowing misrepresentations, asserting unsupportable claims, and pursuing those assertions no matter what the cost to The Regents.  This conduct is sanctionable and The Regents urges such sanctions under Rule 11 and § 1927.

**V.     PERIRX'S "SIGNED PAPER" ARGUMENT RINGS HOLLOW WHEN SIGNED PAPERS ARE THE BASIS OF THE CLAIM – AND § 1927 REQUIRES NO SIGNED PAPER**

PeriRx's principal argument in response to Section H, I, J, and K of the Brief (*ECF 158-1* at 19-25), is that Rule 11 applies only to papers submitted to the Court.  To make the argument, PeriRx must be asking the Court to ignore the Complaint, FAC, its opposition papers regarding the Kevin Kelly deposition (*ECF 81-4* at 2, 6, 7),[1] and its oppositions[2] with respect to the

---

[1] The Brief details the Kevin Kelly deposition-related misconduct by PeriRx, including its counsel's unprofessional attempts to avoid service despite the Court's prior intervention. Regarding allegations of harassment, The Regents welcomes Court review of the deposition transcript of Mr. Kelly (PeriRx's general counsel, author of numerous negotiation memos to RNA, and contract notice party for PeriRx) who was purportedly homebound but then appeared in-person with his colleagues and counsel in a conference room for the settlement conference.

[2] On the Interrogatory Responses, PeriRx's only response is hand-waving—"UCLA made a motion, the Court made a ruling"—with no explanation for its evasive litigation misconduct. *ECF 159, 18*.

protective order and compelled Interrogatory Responses, as signed papers with respect to each of Points H, I, J, and K.  Similarly, as explained in the Brief, PeriRx's failure to consult with patent counsel, despite The Regents' repeated requests to do so and explanations for why it was necessary, led to PeriRx's bizarre signed filings in this case betraying PeriRx's ignorance of the basic tents of patent law (including inventorship, claim scope, patent prosecution, and patent examination) and IP licensing.

But, significantly, PeriRx's argument also overlooks Section 1927 and Local Rule 83.6.1 that have no such signature requirement.  Here, where counsel is at the heart of actions that are meant to vexatiously protract the litigation, a signed paper is not required.

## VI. PERIRX CONCEDES ARGUMENTS ON § 1927 AND LOCAL RULE 83.6.1(B)

PeriRx's Opposition has two glaring omissions that demonstrate not only the soundness of The Regents' motion, but also the weakness of PeriRx's Opposition.  First, PeriRx never addresses The Regents' arguments regarding § 1927.  That statute provides a compelling basis for sanctions where PeriRx and its counsel have "multiplie[d] the proceedings in [this] case unreasonably and vexatiously" so that they should be required to reimburse the Regents.  *28 U.S.C. § 1927*.  Second and similarly, PeriRx completely failed to rebut the Regents' arguments concerning the Local Rules guiding practice in this District, and especially cited Local Rule 83.6.1(b).  PeriRx has failed to respond to The Regents' Brief with respect to its vexatious litigation tactics, including re-pleading in the First Amended Complaint numerous allegations that had been dismissed by the Court, and its dilatory and evasive fact and expert discovery practice that necessitated several interventions by the Court.  Because PeriRx and its counsel have failed to counter those arguments, The Regents' motion should be granted as to both § 1927 and Local Rule 83.6.1.  *See Brown v. Certain Underwriters at Lloyds*, 777 Fed. App'x 34, 36 (3d Cir. 2019) ("Failure to respond to a motion is tantamount to not raising an argument, making the

9

argument unavailable on appeal.") citing *Huck v. Dawson*, 106 F.3d 45, 51 (3d Cir. 1997); *Levy-Tatum v. Navient Sols., Inc.*, 183 F. Supp.3d 701, 712 (E.D. Pa. 2016) "failure to respond to some arguments rendered motion unopposed as to those points).

### VII. PERIRX'S COUNSEL'S PATTERN OF CONDUCT HAS BEEN CONSISTENT AND WARRANTS SANCTIONS

On August 5, 2021, this Court heard The Regents' motion on the late-filed PeriRx new expert damages report. Like virtually all of the matters above, counsel did not handle the matter well, requiring The Regents, RNA, and the Court to use precious resources to handle matters within the context of this Court's rules. As the Court noted:

> You know, I hear what Mr. Hirschhorn is saying as to bad faith. I do think, Ms. Agnew, that you did not handle this well. This is not, at least in my Court, a beg for forgiveness, it's and ask for permission Court, and you did not do that. You took it for yourself and then figured you could get away with it and that is not an appropriate way to conduct yourself, but I also think that you know that the desire to respond is understanable and it's not entirely clear to me how much of this would have been allowable in any event but so what I'm going to do is this, I do think some remedial measures are appropriate because I think there was a pretty clear violation of my scheduling Order.

*ECF 114*, 55: 25 –56: 12. While the Court has not yet decided the appropriate sanction for PeriRx's late-filed expert reports, the significant additional litigation misconduct and misrepresentations by PeriRx and its counsel warrant the same scrutiny as expressed by the Court in the excerpt above, with sanctions as the remedy.

### VIII. CONCLUSION

The Regents and its counsel have demonstrated that PeriRx and its counsel have violated Rule 11, engaged in will bad faith warranting § 1927 sanctions, and have violated Local Rule 83.6.1. The Regents respectfully requests that the Court enter sanctions against PeriRx and its counsel and allow The Regents to recoup the fees, costs, and expenses associated with this unwarranted and unnecessarily protracted litigation.

10

Dated: <u>December 1, 2021</u>   Respectfully submitted,

/s/ *Dennis J. Butler*

Dennis J. Butler (PA ID No. 91564)
Keith A. Jones (PA ID No. 313116)
Philip L. Hirschhorn (admitted *pro hac vice*)
Erin M. Dunston (admitted *pro hac vice*)
Aaron L. J. Pereira (admitted *pro hac vice*)
PANITCH SCHWARZE BELISARIO & NADEL LLP
Two Commerce Square
2001 Market Street, Suite 2800
Philadelphia, PA 19103-7044
Tel: (215) 965-1330
Fax: (215) 965-1331

dbutler@panitchlaw.com
kjones@panitchlaw.com
phirschhorn@panitchlaw.com
edunston@panitchlaw.com
apereira@panitchlaw.com

*Counsel for The Regents of the University of California*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document is being filed electronically with the Court using the Electronic Case Filing (CM/ECF) system. Notice of this filing will be sent to all counsel of record by operation of the Court's CM/ECF system, through which a copy will be available for viewing and downloading.

Dated: December 1, 2021                         By:     */s/ Dennis J. Butler*
                                                                Dennis J. Butler