**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PERIRX, INC., | : | |
| *Plaintiff,* | : | Case No. 2:20-cv-02212-JDW |
| | : | |
| v. | : | |
| | : | |
| THE REGENTS OF THE UNIVERSITY | : | |
| OF CALIFORNIA, *et al.,* | : | |
| | : | |
| *Defendants.* | : | |

## MEMORANDUM

Running a startup is like going all-in in a poker game: someone takes a heightened risk of failure in exchange for the promise of a great reward. Good poker players and good businessmen make those bets based on the information they have, but no amount of information can eliminate the risk of failure. PeriRx, Inc. went all-in on technology that it licensed from RNAmeTRIX, Inc., and which RNA had licensed from the Regents of the University of California. PeriRx's bet didn't pay off, but it thinks the game was rigged, so it has sued RNA for breach of contract.

After more than 18 months of litigation, PeriRx and RNA each seek summary judgment to avoid a trial. After reviewing both motions, the Court concludes that PeriRx's remaining claims fail for at least two reasons. First, PeriRx's First Amended Complaint ("FAC") does not mention many of the supposed breaches that PeriRx cites (nor does its original Complaint), so they are not at issue in the case. Second,

PeriRx seeks to hold RNA liable for conduct in which it did not participate. These and other flaws mean there are no triable issues of fact on these remaining claims. The Court will enter summary judgment on all of PeriRx's remaining claims.

I.      **BACKGROUND**[1]

   A.      **Dr. Wong, RNA, And The License Agreement**

David T.W. Wong is a tenured professor at the UCLA School of Dentistry. Dr. Wong has a lab at UCLA where he has conducted research that has resulted in several patent applications that list him as an inventor. Dr. Wong is also a businessman. In 2007, he founded RNA. Dr. Wong's ex-wife, Sharon Wong, was a shareholder, director, and an officer of RNA, but she has had no role in the company since she and Dr. Wong divorced in 2014. Since then, Dr. Wong has been the only individual affiliated with RNA. In fact, RNA never had any employees or an office.

On January 23, 2008, the Regents and RNA entered into an Exclusive Option Agreement (the "Option Agreement"),[2] which gave RNA the option to obtain an exclusive license to certain of the Regents's patent rights on the terms set forth in an attached license agreement, among other things. After executing the Option Agreement, RNA started to look for a sublicensee. It learned about PeriRx in 2009,

---

[1]     For the sake of brevity, the Court recites only those facts relevant to PeriRx's and RNA's cross-motions for summary judgment, as to PeriRx's claims against RNA.
[2]     The Regents and RNA amended the Option Agreement numerous times, but none of those amendments bears on the Court's resolution of the present cross-motions for summary judgment.

when one of PeriRx's partners, Dr. Jack Martin, contacted Dr. Wong. The following year, RNA and PeriRx started discussing a potential license agreement.

Eventually, RNA exercised the option in the Option Agreement. On December 17, 2010, the Regents and RNA executed the Exclusive License Agreement (the "UCLA Agreement."). The UCLA Agreement granted RNA an exclusive license under the Regents's patent rights to make, use, sell, offer for sale, and import licensed products and services.

On December 20, 2010, RNA and PeriRx entered into an Exclusive License Agreement, by which PeriRx sublicensed licensing rights that RNA had licensed from the Regents (the "Original Agreement"). The Parties amended the Original Agreement in October of 2012 (the "Amended Agreement"). On December 19, 2014, RNA and PeriRx entered into a First Amendment to Amended and Restated Exclusive License Agreement (the "First Amendment"). The First Amendment contains a mutual release of all claims that arose on or prior to its effective date (the "Release"). In August 2017, the Parties entered into a Second Amendment to Amended and Restated Exclusive License Agreement (the "Second Amendment").  The Court refers to the Original Agreement, the Amended Agreement, the First Amendment, and the Second Amendment between PeriRx and RNA, together, as the "License Agreement." The License Agreement terminated on March 15, 2019.

B.     **The Point-Of-Care Patents**

The Regents filed UCLA Case No. 2008-306, entitled, "Probe Immobilization and Signal Amplification for Polymer-Based Biosensor" as Provisional Application No. 61/220,490 and then as U.S. Pat. App. No. 12/823,988. The patent issued as U.S. Patent No. 9,127,304 (the "Probe Immobilization Patent"). PeriRx sublicensed the Probe Immobilization Patent and another patent, UCLA Case No. 2007-527, entitled "High Specificity and High Sensitivity Detection Based on Steric Hindrance and Enzyme-Related Signal Amplification" (the "High Specificity Patent"), via the Original Agreement.[3]  (ECF No. 139 at ¶¶ 15, 43.) On March 7, 2012, the Regents sought to amend certain claim language in the Probe Immobilization Patent to add a claim limitation that requires DNA dendrimers.

On October 24, 2017, the Regents granted an exclusive license to Aruras Holdings LLC to U.S. Patent No. 9,932,635 (the "EFIRM Patent"). The EFIRM Patent resulted from UCLA Case No. 2011-696, entitled, "Method for Exosomal Biomarker Detection by Electric Field-Induced Release and Measurement," which the Regents filed as U.S. Patent Application No. 14/119,843 and which the Patent and Trademark Office issued on April 3, 2018. Previously, the National Cancer Institute ("NCI") awarded a grant to UCLA to develop a liquid biopsy for lung cancer in connection with the EFIRM Patent.

---

[3]     The Court refers to the Probe Immobilization Patent and the High Specificity Patent as the "Point-of-Care Patents."

It appears that the Regents and Dr. Wong expected Aruras to sublicense the EFIRM Patent to EZLife Bio, Inc.  At some point, however, Aruras's license to the EFIRM patent terminated. On February 18, 2020, the Regents licensed the EFIRM Patent to Liquid Diagnostics LLC. Neither RNA nor PeriRx ever held a license for the EFIRM Patent. The Regents also licensed another patent to Aruras and then Liquid Diagnostics: UCLA Case No. 2014-190, entitled "Non-invasive Gene Mutation Detection in Lung Cancer Patients (the "EGFR Patent").

PeriRx contends that both the EFIRM Patent and the EGFR Patent incorporate the same methods as the Probe Immobilization Patent that it had sublicensed from RNA. PeriRx also contends that Dr. Wong and the Regents worked behind the scenes to transfer PeriRx's rights to the Point-of-Care Patents to EZLife and, later, to Liquid Diagnostics. It also complains that, at some point, Dr. Wong collaborated with both companies to conduct research and develop tests for the detection of lung cancer and COVID-19. He performed this work in his lab at UCLA. During their dealings with Dr. Wong, EZLife and Liquid Diagnostics believed that Dr. Wong was acting in his capacity as a researcher and/or professor at UCLA, rather than in his capacity as a corporate representative of RNA. Neither company has had any business dealings with RNA.

### C.    The Designated Indication Of Diabetes

The Regents filed UCLA Case No. 2013-794, entitled, "Salivary Biomarkers for Prediabetes and Type 2 Diabetes" (the "Diabetes Markers") as U.S. Patent App. No. 14/522,975. On June 11, 2013, at PeriRx's request, RNA obtained a license for

the Diabetes Markers from the Regents. At that point, PeriRx and RNA deemed the Diabetes Markers an "Additional Diagnostic Application" under the License Agreement. In December 2014, the First Amendment added the Diabetes Markers to the pool of intellectual property available to PeriRx. In August 2017, PeriRx and RNA designated the Diabetes Markers as PeriRx's Third Indication under the License Agreement.

During this time, the National Institutes of Health ("NIH"), Delta Dental-Michigan, the Barnes Fund for Head & Neck Cancer Research, and the O'Keefe Foundation had awarded research grants to the Regents and the University of Puerto Rico ("UPR"). The two universities collaborated on the research, which Dr. Wong and Dr. Kaumudi Joshipura from UPR led. The grant funds paid for a large clinical trial to identify salivary biomarkers for detecting insulin resistance. As a result of that research collaboration, Dr. Wong submitted the invention report resulting in UCLA Case No. 2016-086, entitled "Salivary Extracellular RNA Biomarkers for the Detection of Insulin Resistance." In June 2015, Dr. Joshipura presented her and Dr. Wong's findings regarding the Insulin Resistance Biomarkers at the 75th American Diabetes Association ("ADA") Annual Meeting. In May 2016, the Regents filed a provisional patent application for the Insulin Resistance Biomarkers (UCLA Case No. 2016-086) (the "Insulin Resistance Provisional Application"). In May 2017, the Regents decided to abandon the Insulin Resistance Provisional Application.

In 2013, PeriRx asked Dr. Wong to use his lab at UCLA to perform an exploratory analysis of the samples from the subjects of the UPR study for a potential association of salivary biomarkers with insulin resistance. While Dr. Wong conducted the exploratory analysis, neither he nor the Regents entered into a sponsored research agreement with PeriRx to fund the validation of the insulin resistance biomarker candidates. Instead, the Regents and Dr. Wong pursued this research with Delta Dental and UPR. After learning that the Regents had abandoned the Insulin Resistance Provisional Application, PeriRx asked the Regents for possible ways that PeriRx could link the Insulin Resistance Biomarkers to the patent application for the Diabetes Markers or pursue new intellectual property related to insulin resistance and salivary biomarkers. Ragan Robertson from the Regents suggested that one path forward would be to collaborate with Dr. Joshipura and UPR. PeriRx contends that it could not pursue a consulting agreement with Dr. Joshipura because the Regents and Dr. Wong refused to turn over Dr. Joshipura's patient samples from the clinical study.

### D.    The Present Litigation

On May 28, 2020, PeriRx brought a lawsuit against the Regents, Dr. Wong, RNA, EZLife, and Aruras. PeriRx voluntarily dismissed its claims against Aruras, and the Court dismissed PeriRx's claims against Dr. Wong and EZLife. On January 15, 2021, PeriRx filed a First Amended Complaint, asserting various breach of contract claims against the Regents and RNA only. On December 10, 2021, the Court granted summary judgment in favor of the Regents on all of PeriRx's remaining

claims. PeriRx contends that RNA committed various breaches of the exclusivity provisions of the License Agreement with respect to the Point-of-Care Patents and the Designated Indication of Diabetes.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted); *see also* Fed. R. Civ. P. 56(c)(1)(A)-(B).

The filing of cross-motions does not change this analysis. *See Transportes Ferreos de Venezuela II CA v. NKK Corp.*, 239 F.3d 555, 560 (3d Cir. 2001). It "does

not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." *Id.* (quotation omitted). Rather, "[w]hen confronted with cross-motions for summary judgment 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Canal Ins. Co. v. Underwriters at Lloyd's London*, 333 F. Supp. 2d 352, 353 n.1 (E.D. Pa. 2004), *aff'd*, 435 F.3d 431 (3d Cir. 2006).

III.    **DISCUSSION**

A.    **Judicial Notice**

At any stage of the proceeding, the Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2), (d). RNA asks the Court to take judicial notice of various patents, patent applications and publications, and certain grant records that are publicly-available on the NIH website. (ECF No. 121-140.) PeriRx has not opposed RNA's request. Therefore, the Court will grant RNA's request for judicial notice of the fact of those various publications, though the Court need not and has not assessed their accuracy.

B.    **Alleged Breaches Not Identified In The FAC**

PeriRx attempts to avoid summary judgment by pointing to alleged breaches that it never asserted in the FAC. But "a 'plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary

9

judgment.'" *Waugaman v. City of Greensburg*, 841 F. App'x 429, 433 (3d Cir. 2021) (quoting *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)); *see also Harmon v. Sussex Cty.*, 810 F. App'x 139, 142 (3d Cir. 2020); *Ragland v. Comm'r New Jersey Dep't of Corr.*, 717 F. App'x 175, 179 (3d Cir. 2017). That means PeriRx cannot pursue alternate breach of contract claims at this stage of the proceedings. Three of its theories fail for this reason.

*First*, RNA's alleged failure to advise or consult with PeriRx regarding the decision to limit the Probe Immobilization Patent to DNA dendrimers does not create a triable issue of fact. PeriRx makes no allegations about that conduct in the FAC. Even if PeriRx could rely on this new factual basis, the Release would bar it. The Regents sought to amend the relevant claim language in the Probe Immobilization Patent Application on March 7, 2012, and the Release bars claims that arose prior to December 19, 2014. The Court has already ruled that PeriRx "may not rely on any conduct that occurred prior to December 19, 2014, as a basis for any of its claims." (ECF No. 62 at ¶ 27.)

*Second*, PeriRx cannot pursue a claim against RNA based on Dr. Wong's or the Regents's alleged failure to enter into a sponsored research agreement with PeriRx to validate the insulin resistance biomarker candidates. Again, PeriRx does not raise this factual allegation anywhere in the FAC, so it cannot rely on it now. In any event, PeriRx does not point to any evidence demonstrating why RNA is liable for Dr. Wong's or the Regents's refusal to enter into a sponsored research agreement. Nothing suggests that Dr. Wong was acting on behalf of RNA, rather

than in an individual capacity or as a UCLA researcher and/or professor. RNA had no role to play in PeriRx's desire to have Dr. Wong conduct academic research in his lab at UCLA. Nor does PeriRx articulate any provision of the License Agreement that might apply. Thus, this new claim would fail as well.

*Third*, PeriRx's new allegations concerning the EGFR Patent are also unavailing. PeriRx appears to have made a single, non-specific reference to this patent in the FAC (ECF No. 71 at ¶ 121), but there are no allegations that the EGFR Patent "incorporates the same methods as the Probe Immobilization Patent for detecting EGFR mutations in saliva." (ECF No. 139-1 at ¶ 114.) Indeed, the FAC does not identify the EGFR Patent by name, let alone put anyone on notice that that technology is a basis for PeriRx's breach of contract claims. Moreover, PeriRx's passing reference in the FAC to the EGFR Patent does not attribute any conduct to RNA or otherwise put RNA on notice that PeriRx is asserting this claim against it. Instead, the allegations make clear that the Regents—not RNA—filed and amended the EGFR Patent application.

### C.   Alleged Breaches By Parties Other Than RNA

Each of PeriRx's remaining claims against RNA fails because PeriRx has no evidence that RNA engaged in the conduct that allegedly breached the License Agreement. Instead, PeriRx points to conduct by the Regents and Dr. Wong and seeks to hold RNA liable for it, without any basis to do so.

### 1.    The Regents

RNA is not an alter ego of the Regents. *See PeriRx, Inc. v. The Regents of the University of California*, No. 20-cv-2212, 2021 WL 5865561, at *5 (E.D. Pa. Dec. 10, 2021). Yet PeriRx contends that RNA has breached the License Agreement based on the Regents' conduct. All of these claims against RNA must fail.

*First*, PeriRx cannot hold RNA liable for licensing the EFIRM Patent to third parties such as Aruras and Liquid Diagnostics. The Court is at a loss as to why PeriRx continues to press this theory as to Aruras, when the Court has dismissed this claim against RNA on two separate occasions. (*See* ECF No. 62 at ¶ 37; ECF No. 90 at ¶ 14.) Even if PeriRx could pursue this claim, it would nevertheless fail. As an initial matter, RNA has never held a license for the EFIRM Patent, so it could never have sublicensed the patent to anyone else. PeriRx admits that the Regents—not RNA—granted a license to Aruras for the EFIRM Patent. PeriRx also admits that the Regents—not RNA—licensed the EFIRM Patent to Liquid Diagnostics. In addition, the granting of that license could never constitute a breach of the License Agreement because the License Agreement, and PeriRx's corresponding rights under it, terminated on March 15, 2019, and the Regents did not license the EFIRM Patent to Liquid Diagnostics until February 18, 2020. Thus, even if PeriRx had any rights to the EFIRM Patent or its methods, those rights terminated long before the Regents granted a license to Liquid Diagnostics.

*Second*, to the extent that PeriRx contends that RNA breached the License Agreement by developing the EFIRM Patent and/or obtaining a grant from the

NCI, those claims would fail because RNA did not do either of those things. The Regents applied for the EFIRM Patent, and the NCI issued the grant award to the Regents—not RNA. (ECF No. 139 at ¶¶ 45-48, 77.) There is no evidence that RNA was involved at all with any of those activities.

*Third*, to the extent that PeriRx contends that RNA breached the License Agreement by obtaining grants from the NIH to perform a clinical trial for insulin resistance and filing the Insulin Resistance Provisional Application, those claims would fail for the same reason. Again, RNA did not do either of those things; the Regents did. PeriRx admits that the Regents filed a provisional patent application for the insulin resistance biomarkers and later abandoned it. (*Id.* at ¶¶ 35-36.) PeriRx also admits that the NIH awarded research grants to the Regents and UPR— not RNA. (*Id.* at ¶¶ 28-30.) Thus, none of this conduct can be attributed to RNA or form the basis of PeriRx's breach of contract claim against RNA.

### 2.    Dr. Wong

Dr. Wong wears many hats, and in the early days of this case, the Court cautioned PeriRx that it must allege specific facts that make it plausible that Dr. Wong was acting pursuant to his role as RNA's agent in order to impute liability onto RNA. (ECF No. 90 at ¶ 13.) That was at the pleading stage, and PeriRx's burden is higher now. Instead of meeting that burden, PeriRx asks the Court to assume that Dr. Wong always acted on behalf of RNA. Its argument rests on twisted logic. RNA could only act through Dr. Wong, who was its sole representative after his divorce. But the inverse is not necessarily true. That is,

13

although RNA could only act through Dr. Wong, Dr. Wong did not always act for RNA. He sometimes acted as an individual, and he sometimes acted as a UCLA researcher and professor. PeriRx needs some evidence to show that Dr. Wong was wearing his RNA hat at relevant times, but it has none.

### a.    EFIRM

There is no dispute that Dr. Wong has collaborated with EZLife and Liquid Diagnostics to conduct research and develop tests for the detection of lung cancer and COVID-19. But Dr. Wong never met with EZLife or Liquid Diagnostics while acting as an officer of RNA. Over the course of their dealings, EZLife and Liquid Diagnostics believed that Dr. Wong was acting in his capacity as a researcher and/or professor at UCLA. It appears that any work Dr. Wong did in collaboration with both companies was done in his lab at UCLA. And Liquid Diagnostics' COO testified that he had never heard of RNA before receiving a subpoena in this case.

Although PeriRx denies many of these facts in its Response to RNA's Statement of Undisputed Material Facts (*e.g.*, ECF No. 139 at ¶ 54), it does not point to any admissible evidence that might establish that Dr. Wong was acting for RNA at any relevant time. Instead, it attempts to rebut RNA's evidence by pointing to the same facts it relied on to pursue its alter ego theory of liability against the Regents. (*See id.* at ¶¶ 54, 81-83.) This evidence is unavailing for two reasons. *First*, the evidence that PeriRx relies on suggests that RNA failed to follow corporate formalities. None of this evidence has anything to do with Dr. Wong's

dealings with EZLife or Liquid Diagnostics. *Second*, PeriRx does not advance an alter ego theory in its briefing regarding its claims against RNA. In any event, the Court has ruled that the evidence is insufficient to establish that RNA is an alter ego of the Regents. *See PeriRx*, 2021 WL 5865561 at *5. To the extent that PeriRx intended to rely on a theory of "reverse piercing" to hold RNA liable for Dr. Wong's conduct, that theory would fail as well. *See United States v. Kim*, 806 F.3d 1161, 1168 (9th Cir. 2015) ("California has rejected 'reverse-piercing' actions that hold an alter ego corporation liable for the actions of its shareholders."). Thus, none of the alter ego evidence rebuts or calls into question RNA's evidence that Dr. Wong was not acting on behalf of RNA when he dealt with EZLife or Liquid Diagnostics.

Even if the Court were to impute all of Dr. Wong's conduct to RNA, PeriRx's claim would still fail because there is no evidence that Dr. Wong or RNA "allowed" EZLife or Liquid Diagnostics to do anything. As an initial matter, PeriRx has no evidence that Dr. Wong or RNA had any dealings with Liquid Diagnostics while PeriRx held any rights under the License Agreement. The Regents did not issue a letter of intent to Liquid Diagnostics until July 2019, and PeriRx's rights to the EFIRM technology (if they ever existed) terminated as of March 15, 2019.

Regarding EZLife, neither Dr. Wong nor RNA had the ability to "allow" EZLife to use the EFIRM technology. Neither Dr. Wong nor RNA licensed the EFIRM Patent from the Regents. Therefore, they had no ability to issue a sublicense to EZLife. In any event, PeriRx does not contend that RNA sublicensed the EFIRM Patent (or any other patent) to EZLife. Nor does PeriRx explain how RNA "allowed" EZLife to

use technology that RNA licensed to PeriRx or how doing so amounts to a breach of the License Agreement. In a prior Order, the Court ruled that "RNA's alleged failure to prosecute or protect … patent rights against … EZLife cannot form the basis of a breach of contract claim because neither the UCLA Agreement nor the License Agreement required anyone to take legal action against alleged infringers." (ECF No. 62 at ¶ 29.) PeriRx's present attempt to recharacterize its claim to avoid that outcome is unavailing.

**b.    Insulin resistance**

PeriRx has abandoned its claim that RNA breached the exclusivity provisions of the UCLA Agreement and the License Agreement by "filing and attempting to prosecute" the Insulin Resistance Provisional Application. (ECF No. 71 at ¶¶ 331(b), 339(b); *see also id.* at ¶¶ 191, 283 (alleging that Dr. Wong and RNA "applied for patents behind PeriRx's back with respect to diabetes and insulin resistance that directly competed with patents licensed to PeriRx by RNA").) Indeed, PeriRx did not rely on the filing of the Insulin Resistance Provisional Application in its own motion for summary judgment. Then, in response to RNA's motion, PeriRx contends that "RNA['s] reliance upon the Insulin Resistance Provisional Application is simply misplaced and is nothing more than a red herring. This Application was abandoned in May 2017 and PeriRx did not even learn about it until December 2017." (ECF No. 139-29 at 13.) Thus, PeriRx has made clear that it is no longer pursuing a claim based on this conduct. *See Reeves v. Travelers Companies*, 296 F. Supp. 3d 687, 692 (E.D. Pa. 2017) ("When a party opposing

summary judgment responds to a summary judgment motion but fails to address the substance of any challenge to particular claims, that failure 'constitutes an abandonment of th[o]se causes of action and essentially acts as a waiver of these issues.'") (quotation omitted).

Separately, PeriRx complains that Dr. Wong and the Regents submitted various grant and research proposals regarding Salivary Biomarker Development for Insulin Resistance Detection: 1) a research grant proposal and a research agreement with Delta Dental; 2) an application and a poster to the American Diabetes Association; and 3) a manuscript that would later become a published paper. PeriRx also complains that Dr. Wong refused to give PeriRx patient samples from the UPR clinical trial. Like its other allegations based upon Dr. Wong's actions, PeriRx has failed to present evidence that Dr. Wong did any of this on behalf of RNA. Tellingly, PeriRx attributes Dr. Wong's conduct to the Regents, arguing that his conduct demonstrates that "[r]ather than be a partner with PeriRX, **UCLA** was its competitor which violated the exclusivity provision of the agreements." (ECF No. 139-29 at ¶ 12 (emphasis added).)

PeriRx has not attempted to set forth any evidence to attribute this conduct to RNA, other than Dr. Wong's status as RNA's sole representative. That is not sufficient to create a triable issue of fact, especially where all of the other evidence indicates that Dr. Wong was acting as a UCLA researcher. Indeed, the research grant proposal to Delta Dental identifies Dr. Wong's affiliation with UCLA (not RNA), and the actual research agreement itself is between Delta Dental's

affiliates and the Regents (not RNA). (ECF Nos. 122-137, 122-138.) The evidence also makes clear that the application to the American Diabetes Association, the poster, and the manuscript were part of the research collaboration agreement between UCLA and UPR, led by Dr. Wong and Dr. Joshipura. (ECF Nos. 122-139, 122-140, 122-141, 139 at ¶¶ 28, 32.) Likewise, PeriRx's complaint regarding Dr. Wong's and the Regents's refusal to turn over Dr. Joshipura's patient samples stem from that same collaboration, which did not involve RNA. Thus, none of this evidence creates a question as to whether Dr. Wong was acting on behalf of RNA when he was researching and developing the salivary biomarkers for insulin resistance.

## IV.   CONCLUSION

PeriRx cannot prevail on its breach of contract claims against RNA based upon factual allegations that are not included in its First Amended Complaint or on conduct that it cannot tie to RNA. As a result, RNA is entitled to summary judgment on PeriRx's claims against it. An appropriate Order follows.

**BY THE COURT**:

*/s/ Joshua D. Wolson*
HON. JOSHUA D. WOLSON
United States District Judge

January 10, 2022