IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PERIRX, INC., | : |
| *Plaintiff,* | : Case No. 2:20-cv-02212-JDW |
| v. | : |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, *et al.*, | : |
| *Defendants*. | : |

## **MEMORANDUM**

The possibility of a big case can lead lawyers to make a number of mistakes. They take on cases without the requisite expertise. They drink their clients' Kool-Aid and shift from advocate to acolyte. Or they cut corners to save money and litigate a case for as low a cost as possible. To some degree, all of these seem to have been at play with respect to the claims that PeriRx, Inc. asserted against the Regents of the University of California in this case. PeriRx's counsel took on a complicated case about patent licensing, apparently without a background in patent law. It failed to consult with more experienced patent counsel. And it made assertions in its pleadings and in summary judgment briefing that the record did not support and for which it lacked a good faith basis.

The Regents want PeriRx and its counsel sanctioned for this conduct. And, in a couple isolated instances, the Regents have identified failings by PeriRx and its counsel that warrant sanctions. For the most part, though, what the Regents

have identified is sloppiness on the part of PeriRx and its counsel. And while the Court does not condone lawyers' sloppiness, the Court is also not a roving tribunal of professional ethics. Not every incidence of shoddy lawyering justifies sanctions. Most of the conduct that the Regents has identified in its sanctions motion falls into this latter category: it fell below the standards that the Court expects from counsel before it, but it did not fall to the level of sanctionable. The Court will therefore grant the Regents' motion for sanctions in part and deny it in part.

## I. BACKGROUND

Because the Court writes for the benefit of the Parties, and the facts of this case, including those that form the basis of the Regents' Motion for Sanctions, are well-known to the Parties and the Court, the Court need not recite the full factual background. Rather, for the sake of brevity, the Court incorporates by reference the factual recitations and all defined terms in its prior memoranda disposing of the Parties' various cross-motions for summary judgment. *See PeriRx, Inc. v. The Regents of the University of California*, No. 20-cv-2212, 2022 WL 93620 (E.D. Pa. Jan. 10, 2022); *PeriRx, Inc. v. The Regents of the University of California*, No. 20-cv-2212, 2021 WL 5865561 (E.D. Pa. Dec. 10, 2021).

## II. LEGAL STANDARDS

### A. Rule 11

Federal Rule of Civil Procedure 11 provides that an attorney or party who submits a signed "pleading, written motion, and other paper" to a court "certifies to the best of the person's knowledge, information, and belief, formed after an

inquiry reasonable under the circumstances" that the submission "is not being presented for any improper purpose," the "claims defenses and other legal contentions are warranted by existing law," and the "factual contentions have evidentiary support . . . ." Fed. R. Civ P. 11(b)(1)-(3). The rule "does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37." Fed. R. Civ. P. 11(d).

A court may sanction an attorney or party who violates Rule 11. *See* Fed. R. Civ. P. 11(c)(1). However, such "[s]anctions are to be applied only 'in the exceptional circumstance where a claim or motion is patently unmeritorious or frivolous.'" *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Acct.*, 618 F.3d 277, 297 (3d Cir. 2010). To determine whether conduct is reasonable under the circumstances, the court considers whether the attorney or party had objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact. *See Ford Motor Co. v. Summit Motor Prods.*, 930 F.2d 277, 289 (3d Cir. 1991). Thus, a court should not rely on "[t]he wisdom of hindsight" when evaluating whether an attorney or party acted reasonably. *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 94 (3d Cir. 1988). "Any doubt as to the filer's reasonable belief or inquiry should be resolved in favor of the party charged with the violation." *Brice v. Hoffert*, No. 15-cv-4020, 2019 WL 3712013, at *2 (E.D. Pa. Aug. 7, 2019) (quotation omitted); *see also Conboy v. United States Small Bus. Admin.*, 992 F.3d 153, 165 (3d Cir. 2021) (same).

### B.     Section 1927 And Local Rule Of Civil Procedure 83.6.1

Aside from asserting frivolous claims and arguments, attorneys may not "unreasonably and vexatiously" multiply the proceedings in any case. 28 U.S.C. § 1927 ("Section 1927"). A court can require an attorney who does so to pay any "excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Id.* Unlike Rule 11, this prohibition applies to discovery conduct. *See Selzer v. Dunkin' Donuts, Inc.*, No. 09-cv-5484, 2015 WL 3668647, at *3 (E.D. Pa. June 15, 2015) ("[A]ttorneys who engage in misconduct, including discovery abuses, are still subject to sanctions under … 28 U.S.C. § 1927."). The Court's Local Rules prohibit the same conduct and authorize the Court to discipline an offending attorney as the Court deems just. *See* L. R. Civ. P. 83.6.1. However, unlike Rule 11, "[a] finding of bad faith, proved by clear and convincing evidence, usually is required for sanctions imposed under § 1927 [or] Local Rule 83.6.1[.]" *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 469 F. Supp. 3d 357, 360 (E.D. Pa. 2020). A party can show bad faith by demonstrating an ulterior motive, misconduct such as knowingly using perjured testimony, citing as binding authority overruled or non-binding cases, or otherwise misrepresenting facts or law to the Court. *See Johnson v. Resources for Human Devel.*, 888 F. Supp. 689, 692 (E.D. Pa. 1995), *aff'd sub nom.*, *Hicks v. Arthur*, 91 F.3d 123 (3d Cir. 1996). Courts often look to a course of conduct, rather than just an individual act, in imposing sanctions under Section 1927. *See, e.g.*, *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96 (2d Cir. 1997).

4

## III. ANALYSIS

### A. Scope Of Motion

The Regents ask the Court to sanction PeriRx for proceeding with the litigation after receiving a fourteen-page, single-spaced letter from the Regents that detailed "five overarching issues in the case." (ECF No. 158-1 at 15.) Some, but not all, of the Regents' arguments in that letter overlap with those they raise elsewhere in their present motion. As a practical matter, the Regents ask the Court to incorporate that letter by reference, but to do so would amount to an end-run around the Court's individual Policies and Procedures governing page limits for opening briefs.[1] Thus, the Court will not consider issues that the Regents raised in that letter unless they also raised them in their supporting memorandum.

### B. Pleadings-Related Issues

#### 1. Pre-suit diligence

PeriRx made allegations in both its original Complaint and its First Amended Complaint ("FAC") about the assignment of certain patents. It appears PeriRx made those allegations based on its counsel's misunderstanding of certain documents concerning new inventor oaths and assignments. No doubt, PeriRx's counsel could and should have done more to understand these documents, given how complex and specialized an area patent law is. But the Court is not aware of any obligation that counsel consult a specialist to satisfy Rule 11. PeriRx's

---

[1] *Available at* https://www.paed.uscourts.gov/documents/procedures/wolpol.pdf.

counsel, by the Regents' own admission, reviewed documents and made allegations based on counsel's understanding of those documents. Rule 11 does not require more; it certainly does not make sanctionable a "lack of knowledge of basic patent law," as the Regents suggest. (ECF No. 158-1 at 11.) Nor is there evidence that counsel made those allegations in bad faith (though the allegations certainly multiplied the proceedings).

The same holds true for PeriRx's allegations about Dr. Joshipura's role in connection with the Diabetes Patent. The record reveals that PeriRx made allegations, the Regents disputed them, and they won a victory. But it does not demonstrate that counsel's conduct fell below the standards of Rule 11, Section 1927, or the Local Rules.

Finally, while the Court agrees with the Regents that PeriRx's pleadings were rambling and duplicative, and even at times internally inconsistent, that sloppiness on counsel's part does not make the pleadings sanctionable. They did not multiply the proceedings, and aside from the allegations regarding Temple University, the Regents has not shown that PeriRx lacked a good faith belief for any particular allegation that it made. Nor does counsel's continued inclusion in the FAC of facts that formed the basis for claims that the Court already dismissed justify a sanctions award. If any allegations in the FAC were redundant, immaterial, impertinent, or scandalous, the Regents' remedy was to file a motion to strike, pursuant to Fed. R. Civ. P. 12(f), not seek sanctions ten months later.

PeriRx's pre-suit analysis seems careless, indolent, and, below the standard governing practice before the Court, especially where PeriRx sought "no less than $250,000,000" in damages. (*E.g.*, ECF No. 71 at ¶ 285.) PeriRx's counsel's lax approach to underlying patent issues leaves much to be desired, and the Court would have preferred PeriRx's counsel to have done more before taking up the Parties' and the Court's time with these allegations. But the Court cannot say that the conduct violated Rule 11, nor does it rise to the level of bad faith necessary to impose sanctions under Section 1927 and the Local Rule.

### 2. Alter ego

PeriRx's alter ego allegations in its FAC give the Court some pause but do not rise to the level of sanctionable. While PeriRx was preparing its FAC, the Regents provided PeriRx with information that Dr. Wong, not the Regents, decided to terminate the UCLA Agreement between the Regents and RNAmeTRIX, Inc. ("RNA"). So, when PeriRx filed its FAC, it alleged instead that the Regents "directed Wong to have RNA allegedly terminate its relationship with UCLA and exercise RNA's right to terminate the UCLA Agreement." (ECF No. 71 at ¶ 44.) The documents that the Regents provided to PeriRx did not support that allegation, and it is not clear what basis PeriRx had for it. But the Regents have not shown facts that demonstrate that PeriRx lacked a basis for that allegation, and the Court must resolve all doubts in PeriRx's favor. *See Conboy*, 992 F.3d at 165. So, while the Court has some concern that PeriRx did not have a good faith basis to make these allegations, the Court does not have a basis to impose sanctions

under Rule 11 based on those allegations. Nor does it have a basis to say that PeriRx's counsel acted in bad faith.

PeriRx's arguments about alter ego at summary judgment are a different story because PeriRx misrepresented to the Court the deposition testimony of RNA's former counsel Dr. Christopher Byrd regarding what role, if any, the Regents played during the contract negotiations between RNA and PeriRx. In its Statement Of Material Facts In Support Of Motion For Summary Judgment, PeriRx asserted that Dr. Byrd acknowledged that he "was taking instructions from the Regents" while he was negotiating the License Agreement between RNA and PeriRx, on behalf of RNA. (ECF No. 122-1 at ¶ 105.) In fact, Dr. Byrd submitted an errata to his deposition correcting his response and stating that he had not taken such instructions. (ECF No. 135-6 at 29 (changing response from "yes" to "no").) That change rendered Dr. Byrd's answer to that question consistent with the majority of his deposition, when he testified that he did not submit any contract terms to the Regents for pre-approval, and the Regents was not controlling him during those negotiations. PeriRx never disclosed Dr. Byrd's errata but chose instead to present his uncorrected testimony as his actual testimony.

PeriRx had no good faith basis to present Dr. Byrd's uncorrected testimony as fact, so the Court concludes that sanctions are appropriate. The responsibility for preparing the Statement of Facts and the brief rested with counsel, not PeriRx itself. So, pursuant to Rule 11, the Court will issue a judicial reprimand of PeriRx's counsel for this conduct. In addition, this conduct seems to reflect a lack of

candor to the Court and might run afoul of governing standards of professional conduct. *See* L. R. Civ. P. 83.6, Rule IV.B (adopting the Rules of Professional Conduct set forth by the Supreme Court of Pennsylvania); 204 Pa. Code Rule 3.3(a) ("A lawyer shall not knowingly: (1) make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer; … (3) offer evidence that the lawyer knows to be false."). But, while the citation to Dr. Byrd's uncorrected testimony might have been in bad faith, there is no evidence that it multiplied the proceedings in any meaningful way, so the Court will not enter sanctions under Section 1927 or the Local Rules.

### 3. Release

The clear and unambiguous language of the Release barred many of the claims that PeriRx asserted in its original Complaint. But PeriRx did not acknowledge or make any allowance for the Release. Instead, it waited until the Regents (and their co-defendant RNA) filed motions to dismiss and then argued that the Release was unenforceable. Its arguments failed, and its allegations of fraud were conclusory and frivolous at best. But its economic duress arguments were a closer call. As a matter of practice, PeriRx should have pled the facts that it claimed established economic duress to avoid the Release. Instead, it chose to ignore the Release, possibly because it viewed the economic duress argument as a silver bullet to defeat the Release. The Court disagreed, but the Court cannot say that PeriRx's position lacked merit. The Third Circuit has cautioned that

"'[w]hen divining the point at which an argument turns from merely losing to losing and sanctionable' courts must 'resolve all doubts in favor of the signer of the pleading.'" *Conboy*, 992 F.3d at 165 (quoting *Abdelhamid v. Altria Grp., Inc.*, 515 F. Supp. 2d 384, 392 (S.D.N.Y. 2007)). Thus, the Court will not sanction PeriRx pursuant to Rule 11. Nor are sanctions warranted under the higher standard of Section 1927 and the Local Rules.

### 4. Statute of limitations

Many of PeriRx's claims in its original Complaint and its FAC were based on actions that occurred many years before PeriRx filed suit. In response to the Regents' predictable statute of limitations arguments, PeriRx argued that several doctrines barred the application of the statute of limitations. But the Court concluded that "PeriRx did not engage in a meaningful analysis regarding any of the various tolling doctrines upon which it relie[d]," and its cursory arguments were factually and legally unsupportable at the time it made them. (ECF No. 62 at ¶¶ 41-42, 47-48.) Pleadings, motions, and briefs are "not an opportunity for lawyers to throw things against the wall and see what sticks." *Greenspan v. Platinum Healthcare Grp., LLC*, No. 20-cv-5874, 2021 WL 978899, at *3 (E.D. Pa. Mar. 16, 2021). Yet that seems to be what PeriRx did with respect to the Regents' statute of limitations arguments: it identified and argued for the application of every doctrine that might avoid the statute of limitations, regardless of its applicability. Rule 11 demands more of lawyers. As a sanction, the Court will reprimand PeriRx's counsel, but it will not impose a monetary sanction.

There is no evidence that PeriRx's conduct crossed the line from zealous advocacy (or maybe negligence) to bad faith. It therefore does not offer a basis for sanctions under Section 1927 or the Local Rules.

### 5. Aruras

PeriRx did not allege that the Regents licensed the Point-of-Care Patents to Aruras. Instead, PeriRx alleged that the Regents licensed the EFIRM Patent, which incorporated methods already licensed to PeriRx via the Point-of-Care Patents. Dr. Raouf Guirguis of Aruras threatened to sue PeriRx for infringement and "agreed that patents that had been licensed by UCLA to RNA and then to PeriRx [i.e., the Point-of-Care Patents] overlapped with patents that had been licensed from UCLA to Aruras [i.e., the EFIRM Patent], because EFIRM was applied using methods that were already licensed to PeriRx" by way of the Point-of-Care Patents. (ECF No. 71 at ¶¶ 105-106.) There is no question that the Regents contest this "overlap" theory as a matter of law and fact. However, given the allegations concerning Aruras's similar views of the matter, PeriRx's allegations were not unreasonable, and the Court sees no basis to impose sanctions for them.

### 6. Temple

In both its original Complaint and the FAC, PeriRx alleged that by 2016 at the latest, "PeriRx was negotiating with several entities, including ... Temple University, about developing tests for the detection of insulin resistance." (ECF No. 1 at ¶ 139; ECF No. 71 at ¶¶ 144, 262.) These allegations were false, in two regards. *First*, PeriRx's first contact with Temple was in November 2019, many months after

11

its rights under the License Agreement had terminated and more than two years after the Regents abandoned the Insulin Resistance Provisional Application. *Second*, and more troubling, PeriRx never had any negotiations with Temple about diabetes or insulin resistance related technology. Because PeriRx made this allegation knowing that it never engaged in any negotiations with Temple, it violated Rule 11. And it was not some harmless error. It forced the Regents to take discovery from Temple to gather information about PeriRx's assertion. (*See* ECF Nos. 85-2 – 3 (referencing Regents subpoena to Temple).) That discovery wouldn't have been necessary without those false allegations. Under Rule 11, PeriRx must bear the expense of forcing the Regents to pursue this false claim in discovery.

### 7. LabCorp

PeriRx alleged that LabCorp "walked away from the table" once it "learned that [Dr.] Wong and UCLA had gone behind PeriRx's back, done their own studies and published research while cutting out PeriRx[.]" (*E.g.*, ECF No. 71 at ¶ 144.) Although LabCorp's representative testified that LabCorp ceased negotiations with PeriRx for other reasons, it was not unreasonable for PeriRx to believe that some or all of these issues impacted LabCorp's decision. Having the benefit of LabCorp's testimony long after PeriRx filed the FAC does not render the allegations baseless. Nor is there any indication that PeriRx's attorneys made this allegation in bad faith. Thus, the Court will not impose sanctions based on these allegations in the FAC.

### C. Discovery-Related Issues

The remaining actions about which the Regents complain relate to PeriRx's discovery conduct. By its terms, Rule 11 does not apply to such conduct. *See* Fed. R. Civ. P. 11(d); *see also Hilburn v. Bayonne Parking Auth.*, 562 F. App'x 82, 85 (3d Cir. 2014). Thus, the Court could only impose sanctions under Section 1927 or the Local Rules.

#### 1. Protective order

Stipulated protective orders might be commonplace in complex commercial litigation, but nothing requires that the parties agree to one in any given case. PeriRx initially resisted but then changed its mind, but that change of heart does not evidence the bad faith necessary to impose sanctions under Section 1927 or the Local Rule.

#### 2. Interrogatory responses and deposition answers

A witness, not his or her counsel, answers deposition questions. And parties, not attorneys, provide substantive responses to interrogatories. Federal Rule of Civil Procedure 33 provides that the "person who makes the answers must sign them, and the attorney who objects must sign any objections." Fed. R. Civ. P. 33(b)(5). By distinguishing between the "person" who makes the answers and the "attorney" who objects, the Rule makes clear that the person responding is the litigant, not the lawyer. "Common sense prevails that it is the attorney that has a broader grasp of the legal theories to be tried and it is often counsel who drafts the responses for his client; but the responses belong rightfully to the client, not the attorney." *Trueman v. N.Y. State Canal Corp.*, No. 109-cv-49, 2012 WL 681341,

at * 5 (N.D.N.Y. Feb. 24, 2010). Absent some showing that an attorney knowingly permitted a client to include false information in an interrogatory response, Section 1927 and the Local Rules do not offer a basis to impose sanctions for substantive interrogatory responses. As to the responses that PeriRx gave in this case, if PeriRx's responses remained deficient after the Court ordered PeriRx to serve revised responses on March 20, 2021, the Regents' remedy was to file a motion for sanctions, pursuant to Fed. R. Civ. P. 37, while discovery remained open.

### 3.     Kevin Kelly subpoena

The Court has little doubt that PeriRx's counsel engaged in immature, unprofessional gamesmanship with respect to the Regents' effort to subpoena Mr. Kelly. First, in an effort to persuade the Regents not to subpoena Mr. Kelly, PeriRx's counsel asserted to the Regents that Mr. Kelly "did not have **any involvement** with the drafting and negotiation of the various agreements." (ECF No. 85-3 at 1 (emphasis added).) But when PeriRx brought the issue to the Court, PeriRx's counsel softened her position, arguing that Mr. Kelly "did not **meaningfully** participate in the negotiation" and "has no **meaningful** knowledge" of the information related to those negotiations. (ECF No. 81-4 at 6, 7 (emphasis added).) That change, while subtle, was significant, and it suggests that counsel was overstating the facts in an effort to obtain the result she wanted. When the Court permitted the Regents to serve the subpoena, PeriRx's counsel engaged in a series of petty acts to frustrate service: she refused to respond to inquiries about

14

Mr. Kelly's whereabouts; she refused to accept service; and she refused to answer questions about whether Mr. Kelly had separate counsel.

This course of conduct was childish and falls below the standard that the Court expects from lawyers before it. But it was not sanctionable. It did not multiply the proceedings in any appreciable way. And while it was juvenile, nothing before the Court suggests bad faith. So the Court will not sanction counsel for it, though it will urge PeriRx's counsel to adhere to a higher standard in the future.

## IV.  CONCLUSION

PeriRx pursued this case aggressively. At times, that aggression led it to disregard Rule 11 or to take positions that multiplied the proceedings. Hopefully, this decision, and the warnings in it, will serve as a cautionary tale for PeriRx and its counsel in the future. An appropriate Order follows.

**BY THE COURT**:

*/s/ Joshua D. Wolson*
HON. JOSHUA D. WOLSON
United States District Judge

January 20, 2022