**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PERIRX, INC.,** : | |
| : | Case No. 2:20-cv-02212-JDW |
| *Plaintiff,* : | |
| : | |
| **v.** : | |
| : | |
| **THE REGENTS OF THE UNIVERSITY** : | |
| **OF CALIFORNIA,** *et al.*, : | |
| : | |
| *Defendants*. : | |

## MEMORANDUM

What started out as a quest for $250,000,000 from the Regents of the University of California has boiled down to a dispute over $20,000 of the Regents' attorneys' fees and costs. For the most part, the Regents' fee petition is reasonable, and the Court will grant the petition for reasons that follow.

## I.     RELEVANT BACKGROUND

On January 20, 2022, the Court sanctioned Plaintiff PeriRx, Inc. for making allegations about Temple University in its pleadings that lacked a good faith basis. Now, the Regents seeks to recoup $20,997 in attorneys' fees and costs as a result of having to subpoena and depose Temple University based on PeriRx's allegations. PeriRx does not object to the Regents' request for (a) $1,413.67 in costs and (b) $1,250 for the preparation of the fee petition, but the Parties dispute the remaining $18,333.33 that the Regents seeks.

The Regents' and its counsel had a modified flat-fee agreement in this case.  The Regents agreed to pay $20,000 for written discovery, including third-party discovery.  Because the Regents sought discovery from six third parties in this case, the Regents seeks to recover 1/6 of that fee, $3,333.33, as the fees incurred in issuing a subpoena to Temple.  In addition, the Regents agreed to pay a fixed fee of $15,000 per deposition, which included the preparation and review of relevant documents, preparation, and attendance at the deposition.  As a result, the Regents seeks to recover $15,000 from PeriRx as a result of deposing Dr. Todd J. Abrams from Temple.

Given the Regents' status as an academic institution, its counsel agreed to reduce its standard hourly rates for senior practitioners to $500.  However, because of the modified flat-fee arrangement for this litigation, the reduced rate is reflected on the invoices but was not the actual amount charged.

## II.  ANALYSIS

The touchstone of any fee petition is reasonableness.  As a result, the party seeking attorneys' fees "bears the ultimate burden" of demonstrating that the proposed fee award is reasonable.  *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005).  The Third Circuit requires district courts to use a two-step approach to calculating fee awards.  "First, a district court should calculate the lodestar—'the number of hours worked multiplied by the prevailing hourly rate'—which carries a 'strong presumption' of 'reasonable[ness]' and 'includes most, if not all, of the relevant factors constituting a 'reasonable'

attorney's fee." *Souryavong v. Lackawanna Cty.*, 872 F.3d 122, 128 (3d Cir. 2017) (quoting *Perdue v. Kenny A.*, 559 U.S. 542, 543-44, 546, 552 (2010)) (alteration in original). Second, "[a]fter calculating the lodestar, the court may deviate from it, but only in the 'rare circumstances In which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" *Id.* (quoting *Perdue*, 559 U.S. at 554). In deciding whether and how much to deviate, courts look at the twelve factors laid out in *Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  *See id.*

A.    **Calculation Of Lodestar**

It is somewhat difficult for the Court to calculate the Regents' lodestar with respect to the Temple subpoena and the Temple deposition. Part of that is because the Regents' counsel's time entries are not always a model of clarity, and part is because the line between responding to the subpoena and preparing for the deposition is a blurry one. However, the Regents have submitted two invoices from their counsel. One, for the period ending April 14, 2021 (ECF No. 168-4), folds all Temple-related work into the third-party discovery category, so the Court will treat all of those entries as relating to document discovery. The other, for the period ending  May 31, 2021, folds all Temple-related work into the Temple deposition category, so the Court will treat that time as relating to the Temple deposition.

In the April 14 invoice, some of the entries are unclear as to how much time the Regents' counsel spent on Temple-related matters versus other matters. That

detail might not have mattered to the Regents or its counsel, given the nature of the fee arrangement. Regardless of the nature of the agreement between the Regents and its attorneys, "it has been long-recognized that where a prevailing party seeks to recover its attorneys' fees, that party's attorneys are required to keep records in sufficient detail that a neutral judge can make a fail evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed." *CitiMortgage, Inc. v. Baumgarten*, No. 14-cv-73, 2020 WL 4572335, at *2 n.3 (D.V.I. Aug. 7, 2020) (citation omitted). The Court will therefore disregard any entities for which it is unclear how much time was Temple-specific. The remaining entries record approximately 5.8 hours of time relating to the Temple subpoena.[1] At the Regents' agreed-upon rate of $500/hour (a rate that PeriRx does not contest), that yields a lodestar of $2,900. That amount appears reasonable for the preparation, service, receipt, and review of documents in connection with a subpoena.

In the May 31 invoice, the Regents' counsel recorded approximately 21.1 hours expended on the Temple deposition, including two attorneys' attendance. At $500/hour, that yields a lodestar of $10,550. That amount appears reasonable to prepare for and take a deposition. Although PeriRx complains that the Regents sent two lawyers to the Temple deposition, the case was complicated and, at the time, the Regents had reason to think that Temple had a major part in PeriRx's

---

[1] The relevant entries are on March 2, 3, 4, 5, 10, and 11 from Dennis Butler. The Court does not have any information regarding Michael O'Meara, so it has disregarded his time entries.

damages claim. It was therefore not impermissible for two lawyers to attend the deposition.

**B.     *Johnson* Factors**

In *Johnson*, the Fifth Circuit laid out 12 factors for district courts to consider in assessing fee awards: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

The lodestar will usually subsume many of these factors, and it does so here, including the first, second, third, fourth, eighth, ninth, tenth, and eleventh factors. These are all the sorts of things that clients and attorneys take into account when negotiating a fee arrangement in the first instance, and the Regents reports that it considered these factors when choosing its counsel and entering into the fixed fee agreement. In addition, the sixth and seventh factors have no particular bearing in this case.

For the Temple subpoena, nothing in the record suggests that the remaining factors warrant a deviation from the lodestar, so the Court will award the Regents their lodestar of $2,900.

In contrast, the fifth and twelfth factors favor an upward adjustment to the full $15,000 that the Regents paid its counsel. First, the Regents negotiated the flat fee with their counsel. As the product of an arms'-length negotiation, the flat fee is indicative of the customary fee for the work that the Regents' counsel performed. In addition, similar cases suggest that the fee should be higher because it should align with the amount that the Regents actually paid for the Temple deposition. In *Straight Path Group, Inc. v. Cisco Systems, Inc.*, No. 16-cv-3463, 2020 WL 2539002 (N.D. Cal. May 19, 2020), the Court awarded the flat fee that a client actually paid its client. *See id.* at *5. More generally, this Court awarded the Regents fees as a sanction because they never should have had to take the Temple deposition. The purpose of sanctions remedies is to make the disadvantaged party whole, to the extent possible. *See, e.g., Huzinec v. Six Flags Great Adventure, LLC*, No. 16-cv-2754, 2017 WL 44850, at * 6 (D.N.J. Jan. 3, 2017); *Bro-Tech Corp. v. Thermax, Inc.*, Civ. No. 05-cv-2330, 2010 WL 147921, at * 4 (E.D. Pa. Jan. 14, 2010). The Regents paid its counsel $15,000 for the Temple deposition pursuant to a fee agreement negotiated at arms' length between a sophisticated party and a sophisticated law firm. Similar cases dictate that the Regents should receive the full amount of fees they expended needlessly. The

Court will therefore apply the *Johnson* factors to increase the fee award from the lodestar to $15,000 for the Temple deposition.

## III. CONCLUSION

PeriRx shall reimburse the Regents $20,563.67 in fees and costs for discovery expenses related to Temple University.  An appropriate Order follows.

**BY THE COURT**:

*/s/ Joshua D. Wolson*
HON. JOSHUA D. WOLSON
United States District Judge

March 3, 2022

7